# MARTHA A. WINGERT

## vs.

# S. RINEHART COHILL.

*Automobile on Highway—Rate of Speed—Injury in Avoiding Collision.*

The operation of an automobile, on a public highway in the open country, at a speed of twenty miles an hour, is not negligence *per se*, where the driver's view of the road is unobstructed, and the road is in good condition and of a reasonable width for the meeting or passing of vehicles.　　　　　　　　p. 403

Error in granting a prayer of plaintiff so phrased as to justify the jury in supposing that plaintiff was free from negligence if he blew the horn of his automobile before undertaking to pass defendant's automobile, *held* not cause for reversal in view of granted prayers of defendant, putting the theory of defendant's case fairly before the jury.　　　　　　　p. 403

In an action for damage to plaintiff's automobile, received in avoiding a collision with defendant's automobile which, while proceeding in front of it along a highway in the same general direction, was seeking to cross the highway into a private lane, *held* that the question of defendant's negligence, as well as of plaintiff's contributory negligence, was for the jury.　　p. 403

It was proper to instruct the jury that defendant was not liable if, upon discovering plaintiff's automobile behind her, she extended her hand out on the left-hand side of the car, in such a way that plaintiff might with reasonable diligence have seen it, and held it there, and that she exercised such ordinary care, prudence and caution as the ordinary prudent person would have used.　　　　　　　　　　　　　　p. 404

It was proper to instruct the jury that it was the duty of one running an automobile to keep it under control, especially at road intersections and bridges, and that if the jury find that defendant had proceeded toward the private lane sufficiently far to enable plaintiff to pass between her car and the obstruction at the side of the road with which he collided, their verdict must be for defendant.　　　　　　　　　　p. 404

*Decided April 29th, 1920.*

Appeal from the Circuit Court for Washington County
(HENDERSON, J.).

The cause was argued before BOYD, C. J., BRISCOE,
THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

*Henry F. Wingert,* with whom was *Harvey R. Spessard*
and *Miller Wingert* on the brief, for the appellant.

*J. Augustine Mason,* with whom were *Mason & Mason* on
the brief, for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

Miss Martha A. Wingert lived just off from the State high-
way, known as the Western Pike, and about two miles west
of Hagerstown, in Washington County. Access to her dwell-
ing from the pike was by means of a private lane, which led
off from the pike. On the 12th of April, 1919, she was re-
turning home in an automobile, which she was driving, the
machine being headed towards Hagerstown.

Just west of the entrance to the Wingert lane a drainage
ditch crossed the pike, and there was on the margin of the
pike at either end of the ditch a culvert for the protection
of those using the highway.

Further to the west there was a slight rise of grade for a
distance in the neighborhood of five hundred feet. Follow-
ing Miss Wingert's car was the car of the plaintiff, Mr.
Cohill, and as he passed the crest of the rise, also headed
toward Hagerstown, he had full view of, and did see, the
car of Miss Wingert ahead of him. He was on his way from
Hancock to Baltimore to keep an engagement in the latter
city, and was running at a speed of from twenty to twenty-
five miles per hour. Miss Wingert's car was proceeding at
a much less speed, somewhere from twelve to fifteen miles an
hour, as she was getting ready to turn from the pike into the
lane leading to her home, and by reason of the acute angle
made by the intersection of the lane and pike, the turn was

necessarily a short one. The plaintiff testified that he gave three signals, by means of the horn on his machine, of his intention to pass Miss Wingert, but there is no evidence to show whether these signals were or were not heard in Miss Wingert's car. Soon after he had made the signals with his horn, he observed Miss Wingert's car drawing closer to the right side of the road, and he then increased the speed of his own car for the purpose of passing. There was a distance of six to eight feet between the end of the culvert and the side of the Wingert lane, and as she made this sharp turn she held out her hand as a warning that she was about to cross the pike. Just how far behind her at that moment Mr. Cohill was is not quite clear, evidently not very far. The extended hand was observed by John Caddie, who was riding on the rear seat of the Cohill car, and he describes the relative position as being but ten feet behind Miss Wingert's car, but the distance must have been somewhat greater, inasmuch as the rear car must have had between that and the leading car the six of seven feet between the Wingert lane and the culvert, together with the length of the culvert itself, but whatever the distance in actual feet was, it was close enough behind that, as Mr. Cohill swung his car across to the right-hand side of the road in an endeavor to pass behind Miss Wingert's car, the rear wheel on the right side of the machine which he was driving came in contact with the end of the culvert, tearing off the rear wheel, displacing the tank, throwing the engine of his car out of place and backward, and otherwise damaging his machine, and it is to recover for these injuries to the car that the present case was brought.

There is one matter of evidence not yet alluded to. Mr. Seibert, a motor vehicle officer, who arrived on the scene about five minutes after the accident, testified that there was a skidding track plainly observable for one hundred and fifty-nine feet back of the culvert, the collision with which cause the damage.

There was testimony given as to the distance within which a car could be stopped by the application of the brake at two or three different speeds, as the so-called skid tracks might be deemed as evidence tending to show the endeavor made on the part of Mr. Cohill to stop his car, and so prevent the accident, or as evidence tending to show his speed to have been greater than he had testified. The road was in good condition and dry, yet Mr. Seibert testified that the marks were plainly visible. These constitute in brief the leading facts brought out in the evidence.

There is but one bill of exceptions in the record, and that was reserved to the action of the Court upon the prayers.

The plaintiff offered three prayers; the first and third of which were granted, and the second was rejected; but as this is the defendant's appeal, the action of the Court upon the plaintiff's second prayer becomes immaterial. The plaintiff's third prayer was the usual damage prayer in such cases. The plaintiff's first prayer was as follows:

"The jury are instructed that if they find from the evidence that the plaintiff blew his horn when approaching the defendant in her automobile, and that the defendant drew her automobile to the right side of the road, and that therefore, the plaintiff had reasonable cause to believe that he was to pass the automobile of the defendant, and then without warning or signal, or without looking back she negligently swerved her automobile across the road, and if the jury shall further find from the evidence that the plaintiff did what any reasonable prudent man would have done under the circumstances, then the jury must find for the plaintiff, provided they further find that the injury was caused by the negligence of the defendant and not by the negligence of the plaintiff."

This prayer is unfortunately phrased, and standing alone might be well calculated to mislead a jury. They might very readily infer from it that all that the plaintiff had to do was to blow his horn, and that having done this he had done all

that was required of him, unless, therefore, the subsequent prayers of the defendant, which were granted by the Court, were sufficient to put the theory of the defendant's case fairly before the jury, a reversal of the judgment would be inevitable.

The defendant offered nine prayers; the first four of which asked the Court to declare as matter of law either that the negligence which occasioned the accident was the direct negligence of the plaintiff, or that if there had been negligence upon the part of the defendant still such negligence was contributed to by the plaintiff, and that without such contributory negligence of the plaintiff the accident would not have occurred, and therefore, that there was no liability of the defendant to the plaintiff. The refusal of these was clearly correct.

The defendant's fifth prayer deals primarily with the question of the speed at which the plaintiff was operating his machine, concluding with words indicative of the degree of care with which a plaintiff in like position with the present one was chargeable with contributory negligence.

The question of what is or what is not a speed that the Court will declare negligent as matter of law varies and must vary very largely with the circumstances of each particular case. Certain it is that the courts have not and will not declare, as matter of law, that the operation of a machine in the open country, upon a public highway at a speed of twenty-five miles per hour is negligence *per se*, where the view of the one operating the machine is unobstructed and the road of reasonable width for two vehicles to meet or pass one another, and the condition of the road way good.

The defendant's sixth prayer was properly rejected. This related to the duty of the person operating a machine, and the prayer in itself would have been proper had there been adequate evidence to sustain the theory upon which it is based, but such evidence is not disclosed by the record, and therefore its rejection does not constitute reversible error.

The defendant's seventh and eighth prayers as granted not only had ample evidence to sustain them, if that evidence was believed by the jury, but were a correct statement of the law upon the defendant's theory of the case. They were as follows:

"The Court instructs the jury if they find from the evidence that the defendant, on the occasion of the accident mentioned in the evidence, and upon discovering that the plaintiff was following her automobile, extended her hand out on the left side of her car (in such manner that the plaintiff by the exercise of reasonable diligence might have seen it), and held it there until she reached the drain mentioned in the evidence or thereabout, that upon reaching the road leading to the Wingert home, she crossed over, and entered said road, and that she exercised such ordinary care, prudence and caution, as the ordinary prudent person would have used under the circumstances, then their verdict must be for the defendant."

"The Court instructs the jury that it is the duty of one running an automobile to keep it under control, especially at road intersections and bridges, and if the jury find that the defendant's automobile in moving toward the intersecting road leading to the Wingert home had proceeded far enough away from the south headwall of the drain mentioned in the evidence to enable the plaintiff's automobile to pass between her car and the said south headwall when he reached the point of said headwall, then the verdict of the jury must be for the defendant, even though they find that the plaintiff ran his car into the said headwall and that it was damaged thereby."

The defendant's ninth prayer is substantially an embodiment of the law as asked to be given to the jury by the defendant's seventh and eighth prayers, and those having been granted, the granting of the defendant's ninth prayer would have been not merely superfluous, but have had a tendency to mislead the jury.

This Court has frequently been called upon to pass upon the amount of evidence requisite for the withdrawal of a case from the consideration of the jury, and the rule will be found laid down in *Baltimore* v. *Carroll,* 128 Md. 68; *Baltimore* v. *Bassett,* 132 Md. 427; *O'Meary* v. *B. & B. Electric Ry. Co.,* 133 Md. 503; and a repetition of it at this time would be superfluous. The rule of law applicable to cases like the one under consideration will be found fully collected in two valuable notes appearing respectively in 41 *L. R. A.* (N. S.) 337 and *L. R. A.* 1916 A, 747.

There was undoubtedly according to the testimony given, evidence from which the jury might have found a verdict in favor of the defendant, as well as in favor of the plaintiff, dependent upon the amount of credence which the jury might place upon the testimony of one or another of the witnesses, and in this condition the case was one properly left to the jury without further direction from the Court than that which was given.

*Judgment affirmed, with costs.*