ROBERT C. WILSON, PLAINTIFF, v. FERDINAND KUHN, DEFENDANT.

Submitted March 13, 1925—Decided October 7, 1925.

Negligence—Motor Vehicle Collision—Circumstances of Collision Reviewed—Primary Negligence Clearly Shown—Contributory Negligence Not So Clear, But Fairly a Jury Question Not To Be Interfered With—Damages Not Excessive.

On defendant's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KATZENBACH.

For the plaintiff, *Whiting & Moore.*

For the defendant, *Joseph C. Paul.*

PER CURIAM.

The plaintiff, while driving his motor car, was severely injured by coming into collision with the motor car of the defendant on the road between Morristown and Mendham. The accident occurred comparatively early in the morning. The defendant was a business man doing business in Passaic, and was on his way to business at the time. His car was a large Locomobile, driven by a hired chauffeur, and, according to the testimony of the plaintiff, was running about fifty miles an hour at the time of the accident. The Morristown-Mendham road runs, substantially, east and west. The plaintiff was employed on a private place situate on the south side of the road, and was driving northward out of the place so as to reach the Morristown-Mendham road. This private place was shut off from the road by a hedge about three, four or five feet high, on top of a bank two to three feet high. There was a space of about eight feet between the hedge and the concrete strip. The plaintiff's testi-

mony does not seem to state what kind of a hedge it was, but the accident occurred on the 28th of January.

The plaintiff's story of the accident was, substantially, this: That it was a cold morning; that he was on low speed until he got to the top of a grade, and, on reaching the top, shifted to second speed and proceeded in that speed until he got out in the road. He then testified as follows:

"As I approached the road I kept looking both ways. You can see through that hedge when you are back a distance from it and looking at it in right angle, or nearly a right angle. You can see through it. As you get closer to it, and begin looking at it at a more oblique angle, you can't see through it, but I looked as much as I could, and as I approached the road I sounded my horn. * * * *Q.* How fast were you going at that time? *A.* Well, it is slightly down grade. This drive was a little bit down grade approaching the road, and, as I neared the road, I threw off the power altogether—that is, I put my foot on the clutch, let the car just drift down at the speed of, I should say, six to eight miles an hour. * * * As I was back up the driveway I could see through the hedge for a short distance, and—but as you approach the lane, you come—the nearer the end of the lane you come—the less you can see, because you are looking very nearly parallel with the road, and there is more hedge to see through, and near the end you come to a blind spot where you simply can't see anything except the road directly in front of you. Then as I—until you get with your eyes just even with the hedge, then you get your first real view of the road. You can see all the way; you can see up the road then."

The above is plaintiff's testimony as to the conditions. Plaintiff testified that, as he was emerging on the road, he blew his horn; that he suddenly saw the defendant's car close on; that that car swerved to the left and the front cleared him, but that the rear skidded and caught the front of the plaintiff's car and swung it over to the right; that the defendant's car went on and the rear wheels fetched up in the bank on the left side of the road some sixty to one

hundred feet down, and one wheel collapsed. The defendant's driver admitted that he knew about this side road and passed it every day. He claimed, however, that the plaintiff's car ran into his right side as he was going by. This raised a controversy which, of course, had to be settled by the jury. Defendant's driver also claimed that defendant's car was going only about twenty or twenty-two miles an hour, but admitted that the car was in fourth speed forward, and this fact alone serves to discredit his testimony to some extent.

The reasons assigned here are that the verdict was excessive, that the trial judge erred in refusing to grant a nonsuit, both for absence of negligence of the defendant and because of evidence of contributory negligence of the plaintiff; third, that the judge refused to direct a verdict on these same grounds; fourth, that the verdict is against the weight of the evidence; fifth, that it is against the clear weight of the evidence, and sixth, that it is contrary to law.

We find it necessary to consider only two of these reasons, weight of evidence and alleged excessiveness of damages.

As to primary negligence, we consider that little needs to be said. If the jury believed the plaintiff's testimony as to the speed of the defendant's car, corroborated to some extent by the circumstances that it was running in fourth speed forward, and the further circumstance that, in endeavoring to avoid the plaintiff's car, it swung clear around and dished one wheen against the bank on the other side of the road, they were clearly entitled to find that that car was negligently driven.

As to contributory negligence of the plaintiff, the case is somewhat more troublesoms, but, after careful consideration, we reach the conclusion that it was clearly a jury question, and, being a jury question, the jury cannot fairly be said to have disregarded the great weight of evidence in failing to find that the plaintiff contributed by his own negligence to the injury. It is, of course, undeniable that the plaintiff's view was considerably obstructed, although not

entirely cut off, by the hedge as he was emerging upon the road. It is also undeniable that there was a comparatively short space between the hedge and the road in which to stop the plaintiff's car at the sight of danger. But it is fairly clear that it could not be said, as a court question, that the plaintiff was under any obligation to stop his car before coming out on the road, get out of it, and go outside the hedge on foot and look up and down the road before proceeding. He seems to have been moving with a great deal of caution, if his story was true. He was going only six or eight miles an hour, without any power on, his car was drifting by the force of inertia, and, possibly, somewhat by gravity; and the case seems to have been one for the application of the rule that he was not required to extend his observation beyond a point where vehicles moving at a lawful speed would threaten his safety. If the defendant's car was, in fact, traveling at fifty miles an hour on a down grade from Mendham to Morristown, the jury might fairly have said that it was this excessive speed that was alone responsible for the catastrophe, because, if that car has been proceeding within the statutory speed, which was all that the plaintiff was required to expect it to be doing, both cars might readily have been handled so as to avert any accident. The evidence left it fully open to the jury to find that the plaintiff's car was struck by that of the defendant, and that the defendant's car was not struck by that of the plaintiff. It is to be noted, also, that the plaintiff's car was coming from the defendant's right, and although, perhaps, the statute is not specifically applicable, the situation was similar to two cars meeting at intersecting streets.

On the whole, we are not disposed to disturb this verdict on weight of evidence. And as to damages, the verdict was not a heavy one, being for $2,625, of which $2,000 can be charged up to personal injury and pain and suffering, the rest being, in effect, applicable to expense. The plaintiff at the time of the trial seems to have completely recovered, but he was very severely injured and was in the hospital for a

considerable period. We are unable to say that the verdict was so excessive as to require this court to set it aside, or to put the plaintiff to the option of accepting a reduced amount.

The rule to show cause will be discharged.