G. GORDON FRANCISCO, ROSE A. FRANCISCO, HIS WIFE, A. VINCENT FRANCISCO, AN INFANT, WHO SUES BY G. GORDON FRANCISCO, HIS NEXT FRIEND, PLAINTIFFS, v. COCA COLA BOTTLING COMPANY OF NEW YORK, INCORPORATED, AND GEORGE WEISS, DEFENDANTS.

Decided March 11, 1932.

For the plaintiffs, *John C. Grimshaw* and *Frank G. Turner.*

For the defendants, *Stein, McGlynn & Hannoch* (by *Edward R. McGlynn*).

MACKAY, C. C. J.   Plaintiffs in this case sought to recover compensation from the defendants because of an accident occurring July 5th, 1930, about nine-fifty A. M., at the intersection of Neptune Highway and Asbury avenue in Neptune township.

The questions put to the jury, which were disputed questions of fact, were:   (1) whether or not the defendants were guilty of negligence, and (2) if guilty of negligence whether the plaintiff G. Gordon Francisco was guilty of contributory negligence.

The plaintiff Rose A. Francisco was awarded $15,000 and of this the plaintiff does not complain.   The jury found a verdict of no cause for action as to G. Gordon Francisco, and a verdict of $250 for the son, A. Vincent Francisco. Plaintiffs, G. Gordon Francisco and A. Vincent Francisco have a rule and it is contended that new trials should be had because the verdict of no cause for action against G. Gordon Francisco was against the weight of the evidence and because the damages awarded to A. Vincent Francisco, the son, were inadequate.

Taking up, first, the case of G. Gordon Francisco the jury could believe from the conflicting testimony that G. Gordon Francisco, who was driving the car in question, was going south on Neptune Highway and was about fifty to eighty feet from the traffic light when it was red.   As he neared the intersection he changed gears, halted his car and really came to a stop.   The light had then turned green and he

changed gears to second, put his hand out and went ahead. He looked into the glass and saw people in back of him and before making the left-hand turn into Asbury avenue he made observations and saw a truck one hundred and fifty to two hundred feet away. It was a bright, clear, sunshiny day with a good view and no curves in the road. From the time plaintiff first saw the truck until the accident happened, he traveled anywhere from fifty to seventy feet and said he blew his horn prior to making the turn. It appears that this is a very wide intersection and the left-hand turn, taking a southeasterly course, was made almost directly at the traffic light which is in the center of the highway. Witnesses for plaintiff testified that they heard a crash and saw the truck out near the center of the highway pushing the Francisco car toward the curb. One witness said that the car and truck never moved after they came in contact with each other. There is testimony that the plaintiff's car started from away over on the right side of the road to make the left turn and there is other testimony that it was nearer the center. None of the witnesses appeared to know the speed of the defendant's truck except one witness who caught a glimpse of it as he was sitting in his office and he said that he thought it was going about thirty miles an hour. The testimony of the plaintiff as to the speed he was traveling prior to and at the time he was making the turn, is ten to fifteen miles an hour. His father-in-law, Mr. O'Brien, said he was turning at a speed of about eighteen miles an hour. Mr. O'Brien also stated that he took his eyes off the plaintiff after he had passed the suspension or traffic light and had a view of one hundred and fifty to one hundred and seventy-five feet and saw nothing within one hundred and seventy-five feet. If that last statement is true it is difficult to understand how there could have been an accident.

The defendant's driver said he was traveling north on Neptune Highway in a three and a half or four-ton Coca Cola truck and that for a distance of one to two blocks from Asbury avenue the road is straight; that he was driving about fifteen to eighteen miles an hour near the right-hand curb;

that the traffic light at Neptune Highway and Asbury avenue was green as he was approaching and when he got under the traffic light the plaintiff's car made a sudden left turn; that no horn was blown and no hand was out; that the truck was then about fifteen feet away from the plaintiff's car and that he (truck driver) applied his brakes and swung the track to the right and the accident happened. The helper on the truck testified that the truck went under the light or near the light, and about fifteen feet away when the plaintiff's car made a sudden left turn into the path of defendant's truck; that the truck made a full right swing to avoid the accident and that both cars stopped almost immediately.

From this conflicting testimony I am inclined to believe that it was peculiarly a question of fact for the jury. I am not relying on the testimony of defendant's driver alone, but if the testimony of Mr. O'Brien, a relative who was interested in the case, is true or partly true, the plaintiff was making the turn at a speed of eighteen miles an hour, which is a fast rate of speed in which to make a left-hand turn and would be a violation of the Traffic act, which, while not standing alone as evidence of negligence, nevertheless can be considered by the jury in determining whether or not there was negligence under all of the circumstances of the case.

Then, too, if what the real estate agent said relative to the place where the accident happened is true, it could very well be and the jury would have a perfect right to believe that the accident happened out near the center of the highway at the time plaintiff made a sudden left-hand turn, and the truck by swinging right and coming in contact with plaintiff's car, could do nothing but push it some distance.

I might say that I have gone over the testimony carefully on two different occasions and it seems to me the testimony is in conflict to such an extent that it was for the jury to say whether or not the plaintiff was guilty of contributory negligence.

In the case of *Stefanacci et al.* v. *Bordens Farm Products Co.*, 125 *Atl. Rep.* 129; 100 *N. J. L.* 160, it appears that the plaintiffs were driving north on the easterly side of River

Drive, and the defendant's team was being driven by its employe in a southerly direction on the westerly side of the same street. On the west side of River Drive are located the rails of an electric railway and when the railway track reaches Gregory avenue it turns eastward across River Drive and into that avenue. The defendant's truck was proceeding in the rails, and, reaching Gregory avenue, turned rapidly and without warning to the east. When it reached the easterly side of River Drive it collided with the plaintiff's automobile, striking it on the left side and injuring its occupants. It was held:

"Evidence that defendant's truck, while proceeding on street in an opposite direction from plaintiffs, turned rapidly and without warning, colliding with plaintiff's automobile, striking it on the left side and injuring its occupants, was sufficient evidence of negligence to justify denial of nonsuit." *Stefanacci et al.* v. *Bordens Farm Products Co., supra.*

"Where the existence of negligence depends upon the conclusion to be reached from a variety of circumstances, considered in their relation to and their reaction upon each other, the jury, and not the court, is normally the tribunal to draw such conclusion." *Sutton* v. *Bell,* 77 *Atl. Rep.* 42; 79 *N. J. L.* 507. See, also, *Hann* v. *Salem & Pennsgrove Traction Co.,* 109 *Atl. Rep.* 509; 94 *N. J. L.* 162.

In the case of *Maurer* v. *Simon,* 133 *Atl. Rep.* 79, the court said: "The suit arises out of a collision between two automobiles in the city of Passaic. Each party claimed that the other was in fault, and both parties claimed damages. The plaintiff was driving his car northerly on Main street, and undertook to turn to his left into Oak street. The defendant going south on Main street struck the plaintiff's car as it was turning and forced it up against a telegraph pole on the south side of Oak street. Plaintiff sued for damages. At the trial the plaintiff was nonsuited for failing to prove the amount of his damages. This nonsuit was probably erroneous, because of the well-settled rule that mere failure to prove substantial damages is not a ground of nonsuit, the claimant being entitled, at least, to a nominal verdict." The

point decided in this case is not the same as that in the case at bar, nevertheless the court clearly said on the facts in this case it was a jury question. That would mean all negligence and contributory negligence.

I have read the cases cited by the plaintiffs. The case of *Wingert* v. *Cohill*, 110 *Atl. Rep.* 857, was not exactly in point because of the fact that the defendant in this case turned into an intersecting road and the plaintiff, who was in the rear of defendant's car, struck a culvert in his attempt to avoid the first driver. It was claimed that the defendant had not put out her hand as notice to the car following that she intended to make the turn.

In the case of *Estabrook* v. *Main*, 147 *Atl. Rep.* 822, the court held that it was clearly a jury question and that the verdict as rendered was justified.

In the case of *Wilson* v. *Kuhn*, 130 *Atl. Rep.* 468, there was evidence that defendant's automobile was going fifty miles an hour and it was held that that speed alone warranted to finding of a verdict. There is no evidence of excessive speed in the Francisco case.

Assuming that the view had by Mr. Gilbert in his office, two hundred feet away from the scene of the accident, that defendant's truck was traveling thirty miles an hour, that would not be an excessive speed in the open country. There was nothing to show that that speed continued. On the contrary, there was testimony on the part of defendants, uncontradicted, as to the speed just prior to the accident.

The case of *Elgin Dairy Co.* v. *Shepherd*, 108 *N. E. Rep.* 234, cited by plaintiff, would be more helpful to the defendant than to the plaintiff because it there holds:

"Where a motorcycle rider, on entering an intersection of streets, saw a motor truck approaching on the right side of the street and there was nothing to suggest a change in the course of the truck, the rider need not anticipate any change in its course, but could act on the assumption that the truck driver would continue on the right side of the street, as required by municipal ordinance."

That is just what the defendant contended in the case at

bar, that is to say, that the truck driver assumed that the plaintiff was going to continue on his course and drive south along Neptune Highway. Defendant says further that plaintiff made the sudden left turn when he (defendant) was fifteen feet away. While this evidence cannot be taken as true and there is other evidence to the contrary, nevertheless, it is not for me to say whether it is true or false, but for the jury.

In the case of *Day et al.* v. *Beyer,* 139 *Atl. Rep.* 317, it appeared that plaintiff was proceeding on his motorcycle west on South Orange avenue in South Orange, and the defendant proceeding east with his automobile on the same street. As they neared Wyoming avenue, which intersects but does not cross South Orange avenue, defendant attempted to turn north to his left into Wyoming avenue in face of the motorcycle, passing from behind another car preceding him for the purpose. Plaintiff then attempted to turn to his own right to avoid the collision. The court said:

"Whether motorist in making left-hand turn at street intersection, resulting in collision with motorcyclist approaching from opposite direction, used proper care and sought opportune time, held for jury.

"Motorist intending to make left-hand turn at street intersection and cross line of traffic was obliged to use great care and seek an opportune time." *Day et al.* v. *Beyer,* 139 *Atl. Rep.* 317.

In the case of *Rogoza* v. *Mahoney,* 136 *Atl. Rep.* 196, it was held:

"Weight of evidence is determinable, not alone by number of witnesses testifying, but by credence the jury, in view of all circumstances, attributes to their testimony."

I realize that plaintiffs' injuries were very serious but I am bound to determine this matter from the testimony as presented by the various witnesses in the case, and I cannot reach the conclusion that the verdict is so against the weight of the evidence as to permit a new trial.

In recent months we have had juries who would listen carefully to the evidence and the charge of the court and have

endeavored to render decisions that would be fair and proper. Of course, they have made mistakes as all human beings do, but on the whole the verdicts have been very satisfactory. I cannot say that the jury was prejudiced in this case, otherwise they would not have given Mrs. Francisco a verdict for $15,000.

The rule to show cause as to G. Gordon Francisco will be discharged.

Concerning the case of A. Vincent Francisco, I can readily understand why the verdict was rendered for $250. Counsel for plaintiffs paid very little attention, in so far as the evidence appears, to the boy's injuries. There is a statement in the brief of plaintiffs in behalf of the boy that the only testimony concerning his injuries is to be found on page 178 of the transcript of testimony. As a matter of fact, testimony will be found on pages 62 and 63 as well. On page 62 we find that Dr. Albright testified that the boy had a fracture of the olecronon process of the ulna. On page 63 the doctor further testified that on the right side there is a little tip of bone uniting the bone in the forearm which was broken off. The boy was in the hospital five days, his arm was placed in a splint and he was allowed to go home. This piece of bone was in the elbow. On page 178 we find that on November 14th, which was about four months after the accident, the doctor said: "On that day I considered the child recovered. He had a condition in his right elbow, a possible sprain, fracture we call it, might have been, and a laceration of that elbow that left a small scar. He had another one on the left side of his scalp that left a small scar and he had some body bruises that were minor in character." There was nothing to be seen on November 14th, 1930, except the scar on the elbow. Whether there was a fracture of this tip or a possible sprain, it is difficult to say because the doctor used the words above mentioned as if it might have been a sprain but that the medical men called it a fracture. In any event, there is no testimony to show when he was cured. As a matter of fact, he was only at the hospital for five days and the arm was put in splints. There was no cast put on the arm and

nothing to indicate that there was anything there of a serious nature, and while it may be that he suffered some pain, nevertheless the testimony is barren of any such statement. However, I presume if I have a right to consider it a possible sprain, I would also have a right to call it a slight fracture. It may be too, that $250 was less than he should have received at the hands of the jury in view of the fact that the jury determined he was entitled to a verdict. I can easily understand that the jury did not give it a great deal of consideration and was not warranted in doing so from the testimony adduced. However, I am going to give the plaintiff the benefit of the doubt in this matter and will increase the verdict of A. Vincent Francisco to $600, which defendant will have twenty days to accept after notice of filing of this memorandum, by filing a consent thereto with the clerk of the Supreme Court, in which case the rule will be discharged, otherwise a new trial may be had as to A. Vincent Francisco on the question of damages only.

On examination of a number of cases cited by plaintiffs' counsel relative to verdicts received for fracture of the arm, I find they are not in point because the injuries in the cases I looked at are not only serious fractures, but include other injuries.