GLENN SULHAM, ADMR. v. ERMAN BERNASCONI

January Term, 1934.

Present: SLACK, MOULTON, THOMPSON, GRAHAM, JJ., and STURTEVANT, Supr. J.

Opinion filed February 6, 1934.

*Fred E. Gleason* for the defendant.

*J. Ward Carver* for the plaintiff.

THOMPSON, J. The plaintiff's intestate, Carroll Sulham, hereafter called Sulham, was killed in an automobile accident in Barre city, which, it is alleged, was caused by the negligence of the defendant. There was a trial by jury, and a verdict and judgment for the plaintiff. The only exception briefed and argued by the defendant is one taken to the denial of his motion for a directed verdict, made at the close of the evidence, on the ground that on the evidence, viewed in the light most favorable to the plaintiff, Sulham was as matter of law guilty of contributory negligence.

At about 4:30 A.M., November 26, 1932, Sulham, Phillip Copping, Viola Pecor (later married to one Labounty), and Phyllis Clark were returning from a dance at South Barre to East Montpelier, via Barre city, in a car driven by Sulham. While traveling north on North Main Street in Barre city, the car left the concrete road at the intersection of that street and Willey Street diagonally across the entrance into Willey Street and Willey Street Bridge, and across and over the northeast abutment to the bridge and into a branch of the Winooski river, which branch is hereafter referred to as the river, landing bottom side up about thirty-five feet from the river bank. Sulham received injuries which resulted in his death.

In the area of North Street involved in the accident, the road runs north and south, it is straight, and consists of two strips of concrete, each nine feet wide, with a marked center line. Willey Street, which has a tar surface, does not cross North Main Street, but extends westerly from it. It flares northerly and southerly at the intersection and is about seventy feet wide at that point. A bridge on Willey Street spans the river. Its easterly end is about forty feet from the westerly edge of the concrete. It is about eighteen and one-half feet wide over all. There is a railroad track between North Main Street and the bridge, its easterly rail being twenty-one feet from the concrete. The planked railroad crossing is about twenty-six feet long and seven feet wide. There is a gradual drop of two feet from the concrete to the railroad crossing, and from there it is nearly level to the bridge. From its intersection with North Main Street, Willey Street narrows as it approaches the bridge, and at the easterly end of the bridge it is the same width as the bridge. There are no guards on the northeast abutment to the bridge nor on the north side of Willey Street as it approaches the bridge to prevent a car from going into the river. Sixth Street, which extends easterly from North Main Street, is next southerly of Willey Street, and Fifth Street is next southerly of Sixth Street.

The defendant was driving a Willys-Knight sedan. There was no glass in the left front window next to the driver's seat, it having been broken about a month before. It was dark at the time of the accident, and the lamps on both cars were lighted.

The defendant was traveling north on North Main Street with the intention of turning onto Willey Street.

The evidence, viewed in the light most favorable to the plaintiff, tends to show the following: The Sulham car came up behind the defendant a short distance south of Sixth Street. Both cars were traveling at about the same rate of speed, which was from thirty to thirty-five miles an hour. When the defendant was just north of Sixth Street, Sulham signaled with his horn that he was about to pass, and, when he was about thirty-five feet north of Sixth Street, he turned to the left on to the west strip of concrete and started to pass the defendant. From that point the cars traveled about ninety feet on the concrete, the defendant's car being ahead on the east strip with its speed slackened some, and the Sulham car on the west strip, traveling thirty-five miles an hour.

When the defendant arrived at a point about opposite the Willey Street bridge, he, without giving any signal to indicate what he was about to do, suddenly turned his car on to the left strip of concrete and into the path of the Sulham car. Sulham, whose car was about one car length back of the defendant's car, immediately turned his car sharply to the left to avoid a collision, and it went on to Willey Street and passed down over the railroad track and over the northeast corner of the abutment to the bridge into the river. It hit a granite stone weighing from five hundred to seven hundred pounds, which was on the end of the abutment, and knocked it off. There is some conflict in the evidence as to how far the defendant's car went on the west strip of concrete. Viola (Pecor) Labounty, who was sitting on the front seat with Sulham, testified that when she last saw the defendant's car, which would be when the Sulham car left the concrete, more than half of it was to its left of the center of the road.

The defendant testified that, as he approached Sixth Street from the south, he looked back and saw a car coming; that it was then a little south of Fifth Street; that in the vicinity of Sixth Street he had reduced his speed to five to eight miles an hour, and he put his left hand out of the window to indicate that he was about to make a left turn; that he traveled at five to eight miles an hour, with his hand out of the window, to the center of the Willey Street intersection, and stopped there; that

while he was there with his car motionless, another car passed him on his left and went into the river; that it did not come very close to him, and it was traveling very fast; that when it went past him, his car was on the right-hand side of the concrete opposite the turn into Willey Street; that when the car started to pass him, he stopped; that he did not turn his car toward Willey Street.

While the defendant and Angelo Santine, who was riding with him, testified that they did not hear a horn, there is evidence from which a jury could infer that the defendant was not wholly to his right of the center of the road when the Sulham car started to pass him, and that he heard the horn of the Sulham car when it was sounded. Santine testified that the defendant started to turn on to Willey Street. Mrs. Labounty was asked on direct examination: "Will you tell the jury what the car ahead of you did after Carroll Sulham blew his horn?" and she replied: "It continued on its way, and, after we blew our horn, we turned to the left of the highway to pass, *it turned back on its right side,* and we were just behind it and going to pass, it turned in on our side, left side."

The plaintiff's evidence tended to show that the Sulham car did not pass the defendant's car, and that the defendant did not in any way indicate by signal that he was about to make a left turn before he crossed on to the west strip of concrete. The Sulham car had two-wheel brakes. There is some conflict in the evidence as to their condition at the time of the accident. There is evidence that they were in good condition; and we assume that was the fact in considering the question before us. It appears from the uncontradicted evidence that the road was free of traffic while Sulham was attempting to pass the defendant.

■ The defendant argues that he had a right to assume that Sulham would obey the law of the road and approach and enter the intersection of North Main Street and Willey Street slowly and with due care to avoid accident, as provided by No. 70, § 68, subd. III, Acts of 1925, until, in the exercise of the care of a prudent man, he saw, or ought to have seen, that the assumption was unwarranted; and he had not so good an opportunity of knowing what was being done as did Sulham. This argument, in view of the defendant's testimony that he saw the

Sulham car coming from the south, that when it started to pass him, he stopped, that it went past him some distance to his left, and that he did not turn his car toward Willey Street, is not available in this Court. He cannot assume something here, which, on his own testimony, he did not assume at the time of the accident.

■ ■ It is provided in the section of the Act of 1925, to which the defendant refers, that: "All intersecting highways shall be approached and entered slowly and with due care to avoid accident." The defendant contends that Sulham, following the defendant's car and approaching the intersection as he did, and at the rate of speed at which he was traveling, was not as matter of law in the exercise of the care of a careful and prudent man in like circumstances. If it can be said that Sulham violated the statutory provision because of the rate of speed at which he entered the intersection, the violation of the statute was not negligence as matter of law. *Higgins* v. *Metzger,* 101 Vt. 285, 291, 143 Atl. 394, 397. The question of Sulham's negligence must be determined by what he did or omitted to do, without regard to the defendant's lack of care. *Higgins* v. *Metzger, supra.*

■ There is no fixed standard by which it can be determined as matter of law whether a certain rate of speed at which a car was driven was negligence. It must necessarily depend upon the circumstances of each particular case. *Chaffee* v. *Duclos,* 105 Vt. 384, 386, 166 Atl. 2. In *Jarvis* v. *Stone* (Iowa), 247 N. W. 393, 395, it is said: "It is difficult to isolate speed, in an automobile accident case, so that it becomes a separate and distinct ponderable element. * * * The fact that accidents have happened at every conceivable rate of speed tells but one story, and that is that the propriety of any rate of speed depends upon all the surrounding facts and circumstances, and this means, not alone the extraneous facts, but the vigilance of the driver and his care in relation to details other than speed, such as the warnings given of his approach and the place selected by him in the highway for the operation of his car."

■ ■ The legal standard of care required of motorists on the public highways is unvarying and alike at all times—that of a prudent man under the same circumstances, *Steele* v. *Fuller,* 104 Vt. 303, 308, 158 Atl. 666. Statutory rules regulating the

operation of automobiles on the public highways are but additional factors to be considered in given situations by which negligence may be measured and determined between conflicting claimants exercising a common right, and they may be determinative in many cases. *Jasmin* v. *Parker,* 102 Vt. 405, 416, 148 Atl. 874. The question whether a car was driven at such an excessive rate of speed as to constitute negligence in the circumstances is usually one of fact for the jury.

In *McAndrews* v. *Leonard,* 99 Vt. 512, 523, 134 Atl. 710, the defendant, while traveling at a rate of speed of from thirty to forty-five miles an hour, attempted to pass another car traveling in the same direction. His car left the road, struck and broke an electric light pole, fourteen to sixteen inches in diameter, and traveled fifty feet further before it stopped. This Court held that on the evidence, under proper instructions from the court, it was for the jury to decide whether the defendant was then operating his car with the degree of care required by law in the circumstances of the case.

In *Higgins* v. *Metzger, supra,* the question of excessive speed was involved. The legal rate of speed where the accident happened was fifteen miles an hour. There was evidence from which a jury could infer that the defendant was traveling thirty-five miles an hour at the time of the accident. This Court said: "Speed may, in circumstances, be excessive though lawful. Thus, a speed of eight miles an hour, though lawful, may be dangerous. * * * On the other hand, a speed in excess of the statutory limit, though unlawful, may be safe. * * * That is to say, the one may warrant an inference of negligence, the other of due care. It all depends on the circumstances." The Court said further: "So far as actionable negligence is concerned, the circumstances shown by the record before us would justify driving a car at a speed substantially higher than the limit fixed by the statute—at least a jury might reasonably say so. It was in the night, the road was smooth and straight; it was wide and level, or practically so; it was entirely free from traffic. We cannot say that thirty-five miles an hour in such circumstances is of itself negligence. Then, too, a speed that would be dangerous to other users of the highway might not be so as to the occupants of the car." See, also, *Wingert* v. *Cohill,* 136 Md. 399, 403, 110 Atl. 857, 859; *Wills* v. *Anchor*

*Cartage & Storage Co.*, 26 Ohio App. 66, 72, 159 N. E. 124, 126; and *Burke* v. *Cook*, 246 Mass. 518, 522, 141 N. E. 585, 587, cited, and quoted from, in *Higgins* v. *Metzger*.

Willey Street is about one mile north of the center of Barre city. At the time of the accident, North Main Street and Willey Street, in the vicinity of their intersection, were free from traffic. There was nothing to obstruct the vision of either driver as they were proceeding north. It was at a time in the morning when travelers had a right to expect that there would be little, if any, traffic on the road. The road was of sufficient width for two vehicles to meet or pass one another. The condition of the roadway was good. We cannot say that approaching and entering the intersection at thirty-five miles an hour in such circumstance was of itself negligence.

■ It appears that there is a dirt shoulder about eight feet wide on the westerly side of the concrete. On the easterly side there is a dirt strip of about the same width, used as a sidewalk, which is about a foot and a half higher than the concrete. The defendant argues that, if Sulham had not been driving at an excessive rate of speed and had had his car under control, he could have avoided a collision with the defendant's car by turning his car onto the dirt shoulder westerly of the concrete or onto the dirt strip easterly of the concrete; that his failure to do so, because of the excessive rate of speed at which he was traveling, was negligence as matter of law.

A jury might reasonably say on the evidence that Sulham would have passed the defendant's car safely, and that there would have been no accident if the latter had not driven his car into the path of the Sulham car.

■ ■ No. 70, § 68, subd. IV, Acts of 1925, provides that when a vehicle overtakes another vehicle going in the same direction, it shall pass to the left of the vehicle so overtaken; and, "the vehicle overtaken shall promptly, upon signal, turn to the right-hand side of the highway in order to allow free passage to its left." When Sulham sounded his horn, and the defendant promptly turned to the right-hand side of the road and proceeded on that side of the road, Sulham had the right to assume that the defendant heard the horn; that he turned to the right-hand side of the road to allow free passage of the Sulham car on his left; and that he would not interfere with

such passage; and Sulham had a right to proceed on that assumption until, in the exercise of the care of a prudent man, he saw, or ought to have seen that it was unwarranted. *Hatch* v. *Daniels,* 96 Vt. 89, 117 Atl. 105; *Chaffee* v. *Duclos, supra,* 105 Vt. at page 389, 166 Atl. 2; *Dumont* v. *Cromie,* 99 Vt. 208, 214, 130 Atl. 679; *Crossman* v. *Perkins,* 101 Vt. 94, 97, 98, 141 Atl. 594; *Jasmin* v. *Parker, supra,* 102 Vt. at page 417, 148 Atl. 874. A jury could reasonably infer from the evidence that the defendant, although he knew that Sulham was attempting to pass him, suddenly, without any warning, drove his car onto the west strip of concrete and into the path of the Sulham car. The plaintiff's evidence tends to show that when this happened, Sulham was confronted with a sudden and unexpected danger through no fault of his own. He had to act instantly, and, if he acted in the light of all the surrounding circumstances, as a careful and prudent man would reasonably act under like circumstances, he did all that the law required of him. Whether he did this was a question for the jury. *Lee* v. *Donnelly,* 95 Vt. 121, 127, 113 Atl. 542; *Porter* v. *Fleming,* 104 Vt. 76, 81, 156 Atl. 903.

Since the question of the contributory negligence of Sulham was one of fact for the jury, the court below committed no error when it denied the defendant's motion for a directed verdict.

*Judgment affirmed.*