STEFAN EISLER *v.* CHARLES WILDER ET AL.

Special Term at Rutland, November, 1935.

Present: POWERS, C. J., MOULTON, THOMPSON, and SHERBURNE, JJ., and BUTTLES, Supr. J.

Opinion filed January 7, 1936.

*Crowley and Smith* for the defendants.

*Vernon J. Loveland* for the plaintiff.

THOMPSON, J. This is an action of tort in which the plaintiff seeks to recover for damage done to his automobile when it collided with a truck owned by defendant Wilder and operated by defendant Hughes, his servant, and which collision he alleges was caused by the negligence of defendant Hughes in the operation of the truck. There was a trial by jury and a verdict and judgment for the plaintiff against both defendants. The defendants excepted.

In the recent case of *Raymond* v. *Capobianco,* 107 Vt. 295, 178 Atl. 896, this Court held that in tort actions where the wrongful act was committed by the servant alone, and the master did not participate in it or adopt it, the master is liable only under the doctrine of *respondeat superior;* that under such

circumstances the liability of the master and servant is several and not joint, and that a joint action cannot be maintained against them. However, as neither of the defendants have challenged the right of the plaintiff to maintain this action, we do not consider that question.

The only exception briefed by the defendants is to the denial of their motion for a directed verdict made at the close of all the evidence. The ground of the motion is ''that the evidence viewed in the light most favorable to the plaintiff, and relying solely upon the testimony of the plaintiff, the court should find that the plaintiff is not free from contributory negligence, and therefore a verdict should be directed for the defendants.''

Baxter Street in the city of Rutland runs north and south, and at its southerly end intersects with State Street. The collision occurred on Baxter Street about two hundred feet northerly of the intersection, about six o'clock p.m., February 11, 1935. Northerly of the intersection, Baxter Street is straight and practically level for one-fourth mile. At the time of the accident, its traveled portion was about twenty feet wide. The day was very cold, it was dark, and the street was very icy.

The following facts appear from the testimony of defendant Hughes. He was attempting to back the truck, which was fifteen feet long, from the westerly side of Baxter Street across the street into the driveway of a Mr. Morgan on the easterly side of the street for the purpose of delivering a load of wood. He turned into Baxter Street from State Street. He then went to Robbins Street and turned around and came back on the westerly side of Baxter Street and parked the truck there, heading south, ''about the length of the truck past the third house.'' He got out of the truck, crossed the street, and found the Morgan driveway. When he returned to the truck, he looked in both directions and no cars were in sight. He got into the truck, with the door open, to back across the street. He then looked in both directions but he did not see any cars. He then put the truck in reverse gear, with the door open, and started backing diagonally across the street into the Morgan driveway, increasing the speed of the truck as he backed. When he was crossing the street, he was leaning out of the truck and looking for the Morgan driveway. After he started backing, he could not have looked back up the street as the body of the truck

would have interfered with his vision. After he started across the street he did not again look up or down it. There was nothing that prevented him from looking through the window of the truck, and if he had looked through the window he could have seen up the street. He did not sound his horn when he started to cross the street, nor did he have anyone at the rear of the truck while he was backing. He did not see the car of the plaintiff until after the collision.

The plaintiff testified that he was traveling southerly on Baxter Street on his right-hand side, which is the west side of the street, toward the intersection of Baxter and State Streets, at a rate of speed from fifteen to eighteen miles an hour. His headlights were on, and so were the street lights on Baxter Street. He turned onto Baxter Street at Park Avenue. As he traveled down Baxter Street he saw nothing as he passed the streets that go off Baxter Street. He first saw the truck when he was fifty feet from it as it started backing across the street. Before it started to back it had been off the traveled portion of the westerly side of the street, and out of the focus of his lights. It backed northerly toward him, and then northeasterly across the street toward the Morgan driveway. As soon as the plaintiff saw the truck start to back, he sounded his horn and sounded it continuously up to the time of the collision. He applied his brakes and lowered his rate of speed from fifteen to four or six miles an hour. The truck was backing and increasing speed, and he continued to slow down. When he saw the truck backing toward him, "and it was such glare ice," he swerved his car to the left, nearly bringing it to a standstill, hoping that the driver of the truck would hear his horn and stop. If he had remained on the right-hand side of the street, the truck would have backed into him and caused a collision there. At the time of the collision there was not sufficient room on either the west side of the street or the east side for the plaintiff's car to pass the truck as the truck was crosswise the road.

P. L. 5110, subd. XI, provides: "A person shall not turn or back a vehicle of any kind in a public highway without taking due and reasonable care to avoid injury to other users of the highway in so doing. A vehicle shall not be driven in a backward direction further than is absolutely necessary to avoid accident."

■ ■ The due and reasonable care imposed by this provision on a person backing a motor vehicle in a public highway is the care of a prudent man in like circumstances. It imposed upon defendant Hughes not only the duty to look for approaching vehicles before he began to back the truck, but also the duty to continue to look and listen while he was backing to avoid injury to other users of the street.

■ We cannot say on the testimony of the plaintiff alone that he was guilty of contributory negligence as a matter of law. He had the right to assume that the driver of the truck would exercise the degree of care imposed upon him by the statute in backing the truck until in the exercise of the care of a prudent man, he saw or ought to have seen that it was unwarranted.

■ It can fairly and reasonably be inferred from the testimony of the plaintiff that because of the backing of the truck toward him he was confronted with a sudden and unexpected danger through no fault of his own. He had to act instantly. If he continued on his way on the right-hand side of the street the truck would back into him. He swerved his car to the left, nearly bringing it to a stop, in the hope that the driver of the truck would hear his horn and stop. It fairly appears from the testimony of defendant Hughes that if he had been looking and listening while he was backing the truck, he could have heard the plaintiff's horn or seen his car in time to stop and avert an accident.

If the plaintiff acted in the light of all the attending circumstances, as a careful and prudent man would reasonably act under like circumstances, he did all that the law requires of him. Whether he did this was a question for the jury. *Lee* v. *Donnelly*, 95 Vt. 121, 127, 113 Atl. 542; *Porter* v. *Fleming*, 104 Vt. 76, 81, 156 Atl. 903; *Sulham* v. *Bernasconi*, 106 Vt. 192, 201, 170 Atl. 913.

*Judgment affirmed.*