ADDIE R. EMERSON *v.* WALTER HICKENS.

January Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed February 7, 1933.

*Fred E. Gleason* for the defendant.

*Marcell Conway* for the plaintiff.

SLACK, J. The plaintiff seeks to recover for personal injuries which she sustained in an automobile accident that occurred a short distance south of Riverton on the main highway between Montpelier and Northfield in the evening of March 5, 1931. The suit was brought against this defendant and one MacMinn, but was discontinued as to the latter at the close of plaintiff's evidence. The plaintiff had a verdict and judgment below, and the case is here on defendant's exceptions.

■ ■ William Hurley, whose qualification as a physician was conceded by defendant, was called as a witness by plaintiff, and after he had testified on direct and cross-examination respecting injuries to, and the condition of, her right eye the following occurred on redirect examination: ''Q. Did you ever know that she was blind in this eye, or that she was suffering from trouble with her right eye, before this injury? * * * * A. No, sir. Court. You don't know anything about it? A. No, I do not know whether she had any trouble or not. Carver. Q. Had you ever treated her for any trouble in this eye? A. No, sir.'' The latter question and answer were objected to as immaterial, irrelevant, and incompetent. It is urged that this evidence, if true, had no tendency to show, and formed no proper ground for, any reasonable inference that plaintiff had had no eye trouble previous to the accident. Assuming, but not deciding, that this is so, it was harmless in view of the doctor's previous testimony which was not objected to. If, as he testified, he did not know that she had had trouble with her eye, it logically, and necessarily, follows that he had not treated her therefor. No inference could be drawn from the answer objected to that could not be drawn with equal logic from the previous answers which were not objected to. It is urged, too, that the evidence was inadmissible because it appeared that the doctor had made no special study of the eye. That is not germane to the question before us, which is simply whether or not he had treated her, not what he found or what he did. The question did not call for expert knowledge. The exception is without merit.

■ At the close of plaintiff's evidence, defendant moved for a directed verdict on the ground that she had failed to show that negligence on his part was the proximate cause of her injuries; the motion was overruled and defendant excepted. Since

defendant introduced no evidence, this exception was not waived as is claimed by plaintiff.

In considering this motion the evidence must be viewed in the light most favorable to the plaintiff. It appeared that the highway where the accident happened, speaking generally, runs north and south, and descends slightly to the north; that one Premo lives in a house that stands on the west side of the highway in that immediate vicinity, and that plaintiff lives in a house that is a little farther south on the east side of the highway; that the main entrance to her house is on the south side of it, and that there is a driveway leading from this entrance to the main highway. The plaintiff, who was seventy years old, testified that she started to go to Premo's for milk; that it was dark and that the highway was slippery; that she went down the driveway from her house to the highway and along the east side of the highway a few steps, she thought less than ten feet, and took one step into the highway and slipped and fell down "not far from the easterly edge of the road"; that she knew that there was a large amount of travel on that highway and feared that she might be hit by an automobile; that she raised herself on her right elbow and began waving a flash light that she had with her; that she kept waving it back and forth in both directions, north and south; that she was in that position when struck by defendant's car, which she did not see until just as it hit her.

The evidence of other witnesses tended to show that one Brown was driving his car south from Montpelier the evening of the accident, that there were three other persons with him, Dr. Cram, Mr. Payson, and Mrs. Wilson; that Cram sat on the right front seat with Brown, Payson sat in the left rear seat, and Mrs. Wilson sat in the right rear seat; that Brown and Cram saw the light from plaintiff's flash light before they reached the place where she lay, but owing to a curve to the left in the highway over which they were traveling and the fact that they were "well on the right side of the road and she was well on the left," the lights of the Brown car did not pick her up until it was very close to her; that Brown, Cram, and Mrs. Wilson saw her just before and when their car passed her; that when their car was "right beside" her Brown and Cram saw the lights of defendant's car which was coming from the south and was, by estimate, one hundred and fifty to two hundred feet away; that the Brown car and defendant's car met about forty

feet south of where plaintiff lay; that defendant's car was then going twenty miles an hour, or less; that it struck plaintiff and shoved her approximately fifty-five feet along and across the highway into, or against, the bank of snow on the west side of the highway; that when it stopped, plaintiff was under it, just in front of the wheels. The evidence further tended to show that the traveled part of the highway where plaintiff lay was about fourteen feet wide, and that south from that point, it was straight, or nearly so, for a distance of, at least, one hundred fifty to two hundred feet. Mrs. Wilson testified that after the Brown car passed the plaintiff she looked through the back window of the car and saw the plaintiff ''until his (defendant's) car passed so that I couldn't see her,'' and that she ''should say'' that the headlights of his car lighted the highway so that she could see plaintiff.

It is clear from the foregoing evidence that the question of defendant's negligence was for the jury. The negligence charged in the declaration is unsafe, immoderate, and reckless speed, failure of defendant to have his car under proper control, and his failure to keep a lookout for persons lawfully using the highway. The law requires that one driving a car in the night-time shall have it equipped with headlights that will render objects in the highway clearly visible at least one hundred fifty feet ahead of such vehicle. Acts 1925, No. 70, § 71. In the absence of evidence to the contrary, it will be presumed that defendant's car was provided with such lights. Nothwithstanding the fact that the surface of the road was slippery and that defendant was driving down a slight grade, it is not apparent, in the circumstances, why he might not have avoided hitting the plaintiff if he had exercised the care of a prudent person in the control of his car and in his lookout for objects ahead of it. Manifestly, it cannot be said as a matter of law that his negligence in these respects was not the proximate cause of plaintiff's injuries. The motion was properly denied.

In its charge the court told the jury that the negligence complained of was that defendant drove his car at a negligent and unreasonable rate of speed *under the circumstances;* that the car was not kept under proper control, and that defendant did not keep a proper lookout, etc. Immediately following this it said:

"Something has been said in argument about the meaning of the term 'keeping an automobile under proper control.' The speed of a vehicle is the critical element in determining whether or not the vehicle is under proper control. The speed must be reasonable under the existing circumstances. The test of control is their ability to stop as quickly and easily as the circumstances may reasonably be expected to require, and when this result is not accomplished, the inference is obvious that the car was running too fast, or that proper effort to control it was not made by the driver."

This is all that was said regarding speed. The defendant excepted to the charge wherein the court said that one ground of negligence complained of was that defendant drove at a negligent and unreasonable rate of speed on the ground that the evidence did not tend to show such fact, nor did plaintiff claim it. It is true that plaintiff did not claim that defendant's speed was fast. She claimed that it was such that if he had been in the exercise of the care of a prudent man in keeping a lookout for objects ahead of him he could have avoided hitting her. If he did not keep such lookout, it was negligent for him to drive at any speed. Speed "under the circumstances" was what the court was talking about; and it explained to the jury fully and accurately the bearing that the element of speed had on the issues involved. It did not make speed alone a ground for recovery, nor could the jury have so understood it. There was no error in the charge in this respect.

■■ The charge of the court permitted the jury to award damages for injuries to plaintiff's right eye down to the time of the trial, but expressly excluded any future damages resulting from such injury. The submission of this element of damages was excepted to on the ground that the medical expert testimony was insufficient to justify it, and *Ryder* v. *Vermont Last Block Co.*, 91 Vt. 158, 99 Atl. 733, and *Parker* v. *Bowen*, 98 Vt. 115, 126 Atl. 522, are relied upon to support this claim. Those cases are distinguishable from this. In the former, the jury was permitted to award future damages that might result from an obscure injury concerning which a layman could have no well-grounded opinion; and in the latter, which was for malpractice,

there was no medical testimony tending to show that defendant was at fault in connection with the presence or removal of a sponge in the patient's body. Dr. Hurley testified on direct examination that plaintiff had bruises on the right temple, the right ear, and the right cheek, and that a few days after the accident she complained of injury to the right eye. He testified on cross-examination that she had a cataract over that eye, but that he did not know the kind or the cause of it. On redirect examination he testified that he didn't think plaintiff could see out of her right eye, but that he was not an eye expert; that he didn't have to be to know that she had a cataract because he could see that. In addition to this, it appeared that plaintiff's right temple and her face above and below the right eye was badly discolored and that her face around that eye was so swollen for some time that the eye was closed, and she testified that she could see out of that eye before the accident but could not afterwards.

It thus appeared that all of the injuries to plaintiff's eye were external, except loss of sight. Expert evidence was not necessary to prove the external injuries. No one knew better than she did whether she could see with that eye before and after the accident. Her testimony regarding that was proper and, if believed, sufficient to establish the facts testified to by her. Had the question of whether her sight was permanently impaired been involved, expert evidence respecting that would undoubtedly have been required. But, as we have seen, that question was not submitted to the jury. Since this was so, this exception is without merit.

The defendant filed a motion to set aside the verdict on the grounds that it was contrary to and unwarranted by the evidence; the motion was denied, and defendant excepted. All that is said regarding this exception is that what was said respecting the denial of defendant's motion for a directed verdict applies with equal force to this exception. What we have said respecting the former motion applies with equal force to this. It was properly denied.

*Judgment affirmed.*