DONALD EAGAN, b. n. f. *v.* HARRY J. DOUGLAS.

October Term, 1934.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed November 7, 1934.

*Fenton, Wing & Morse* for the defendant.

*James P. Leamy* and *Christopher A. Webber* for the plaintiff.

SHERBURNE, J. This is an action to recover for injuries suffered by the plaintiff by reason of having been struck by the defendant's automobile, and comes here upon exceptions by the defendant. The only question necessary to consider is whether the evidence made a case for the jury on the issue of plaintiff's contributory negligence, which is raised by an exception to the denial of defendant's motion for a directed verdict.

The accident happened at about 9.30 in the forenoon of Sunday, January 10, 1933, upon the marble bridge in the village of Proctor. This bridge is one hundred and seventy-five feet long and is level and straight. The roadway over it runs east and west and has a tarvia surface about eighteen feet and three inches wide. On either side of this is a sidewalk about four feet wide and six to seven inches higher than the roadway. At the west end of the bridge the road crosses an overpass to the central part of the village. At the east end the road forks. One road leads to the left toward the hospital and a road to Pittsford. The other road is known as South Street and leads to the right southerly toward West Rutland.

Viewing the evidence in the light most favorable to the plaintiff, the following facts appeared: Just prior to the accident the plaintiff was returning from the Catholic Church, located upon South Street one-fourth of a mile away, and had entered upon the south walk of the bridge at its east end; and the defendant was driving his automobile over the bridge in the opposite direction after entering at the west end, and was proceeding at from twenty-five to thirty miles per hour on his right of the center of the roadway and hugging close to the curb with his right wheels about two feet from it. The south walk ahead and behind the plaintiff was crowded with people returning from church.

At his entrance upon the bridge the plaintiff attempted to cross to the walk on the north side. He looked to the west, the

direction from which the defendant was coming, but saw no cars approaching. He looked to the east and saw two cars coming. He waited on the walk for these to pass. Then, according to his testimony, after looking again to the west and seeing no cars he started to cross, and looking to the east to see if any cars were coming from that direction, saw some coming far enough back so that he thought he had time to cross in front of them. He had taken two to three steps when he was hit by defendant's car at a point when he was from two to five feet from the curb. He did not see defendant's car and the only evidence as to what part of the front of it hit him came from defendant's witnesses. According to the defendant's testimony the plaintiff was hit by the bumper and "flopped" over onto the right fender. According to the witness McIntyre the car hit the plaintiff just inside of the fender and threw him upon the hood. The plaintiff was carried and thrown toward the east and south fifteen or twenty feet and fell beyond the end of the bridge, where the pavement widened out, a little to the right of the course the automobile was traveling, and the automobile swung to the left and went around him and stopped fifteen to twenty feet beyond him out of the way of traffic.

As to the time it took him to get to where he was struck, the plaintiff argues from the testimony of McIntyre that it might have been three seconds. This witness, upon cross-examination, by the plaintiff, testified that it might have been two or three seconds, but upon re-examination testified that he guessed he made it a little high, and upon being asked: "It might have been a matter of a second to take whatever it was, to take two steps or three steps, and so you want to correct your two or three seconds to make it a second even, is that right? Replied: "Might be right, yes." This same witness in direct examination testified that in comparison with an average man walking the plaintiff "started very slow" as he walked out into the roadway, but he immediately qualified this as appears from the following questions and answers. "Q. Well could you tell us about how it would compare with the average man as he walks along the street? A. Why possible some fellows that wasn't too fast, wasn't going to start on a run. Q. That is, the boy wasn't running when he went out? A. No. Q. I suppose you seen boys doing a hop, skip and jump, haven't you? A. Well when he started there really looked just as though he gave one skip and

that step and then I should say another step out, as I would think, would be in the neighborhood of three feet or three and a half feet." The only other witness who attempted to state the time plaintiff took to get to where he was struck was the defendant. When asked how much time he had to see the plaintiff he testified: "I had maybe a couple of seconds and I don't know as I had that much." He testified further that the plaintiff stepped off the walk when the distance between the front of the car and the plaintiff was about four to five feet, and that the time he had to see him was limited to the time the car went four or five feet, whether a second or a minute.

Defendant produced the only witnesses who actually saw both the plaintiff and the car before the collision. The farthest away that any of these placed the car when plaintiff stepped out was that it was the length of the car, or possibly a car and a half. His estimate was that the car was probably fourteen feet long. The car was actually about eighteen feet long over all including front and rear bumpers.

From a fair and reasonable construction of the above, which was all the evidence relative to the way the plaintiff started to cross the roadway and the time he took, and in view of the plaintiff having seen other cars coming from the east and his intention to cross in front of them, we cannot assume that he was walking slower than three miles per hour or four and four-tenths feet per second, or that he took much, if any, over a second to get to where he was struck. At thirty miles per hour the deefndant's car was traveling forty-four feet per second. It could not have been much farther away than that when the plaintiff started.

█ As he approached the bridge the plaintiff had noted that the traffic at that time was all one way, the way he was going, and he saw no cars coming the other way. He testified that when he looked to the west from his station on the south walk, he could look diagonally across the bridge past the west entrance on the north side, but on account of the people on the walk ahead of him he could not see along the side of the bridge upon which he was standing and could not quite see the south side of the west end. If he could see past the west entrance of the bridge on the north side, it follows that he could have seen some part of an automobile approaching toward him on the south side when it was only about half way across and about

eighty-five feet from him. It will be presumed that he saw whatever was in range of his vision, if he looked. Had he looked west the second time, as he testified, he could not have helped seeing some part of defendant's car when he started to cross and it does not avail him to say that he looked and did not see it. *Beattie* v. *Parkhurst,* 105 Vt. 91, 94, 163 Atl. 589; *Harrington* v. *Rutland R. R. Co.,* 89 Vt. 112, 120, 94 Atl. 431; *Carter* v. *Central Vt. Ry. Co.,* 72 Vt. 190, 47 Atl. 797; *Labelle* v. *Central Vt. Ry. Co.,* 87 Vt. 87, 91, 88 Atl. 517; *Wentworth* v. *Waterbury,* 90 Vt. 60, 62, 96 Atl. 334. It follows that he did not look a second time, or if he looked, that he did not look effectively.

It remains to determine if the plaintiff was negligent in starting across to the other side of the bridge without looking effectively a second time. The pedestrian and automobile driver have equal and reciprocal rights in the use of the highway. Each is bound to exercise due care. The look-and-listen rule applicable to one approaching a railroad crossing does not apply to pedestrians about to cross a street or highway, nor does the constant vigilance rule apply to him while crossing. The law does not say how often he must look, or precisely how far, or when or from where. He is simply required to exercise for his own safety the measure of care that a prudent man would exercise in the same circumstances. But as circumstances vary so do the practical requirements of the rule vary. What is prudence in one case, may be negligence in another, and downright foolhardiness in still another. The farmer on a back and unfrequented highway is not held to the same degree of vigilance when he crosses the road to his barn as is the man who attempts to cross a busy city street crowded with traffic. The circumstances and dangers are always to be taken into account in determining what is due care or the evidence of it. *Aiken* v. *Metcalf,* 90 Vt. 196, 198, 199, 97 Atl. 669. There was no regular crossing at the point where the accident happened and so a pedestrian attempting to cross there was required to exercise greater vigilance than if it had been a regular cross-walk. *Howley* v. *Kantor,* 105 Vt. 128, 131, 163 Atl. 628.

In our cities and villages due care requires a pedestrian in all cases to look for traffic before starting to cross a main traveled street between intersections, or to look at such time and place as will reasonably be of some benefit in protect-

ing him and giving him knowledge of the condition of the traffic. *Watson* v. *Lit Bros.*, 288 Pa. 175, 135 Atl. 631; *Sheridan* v. *Limbrecht,* 205 Iowa, 573, 218 N. W. 278; *Richardson* v. *Williams,* 249 Mich. 350, 228 N. W. 766; *Mosely* v. *Mills,* 145 Wash. 253, 259 Pac. 715; *Stephen Putney Shoe Co.* v. *Ormsby's Admr.,* 129 Va. 297, 105 S. E. 563; *Kalify* v. *Udin,* 52 R. I. 191, 159 Atl. 644; *Hizam* v. *Blackman,* 103 Conn. 547, 131 Atl. 415. In view of the speed at which automobiles are now permitted to travel, the pedestrian should not be permitted to rely upon an observation made so long prior to an entry of the zone of danger as to be wholly ineffective, and this is especially true when the line of vision is met by an obstruction. *Mertens* v. *Lake Shore Yellow Cab & Transfer Co.,* 195 Wis. 646, 218 N. W. 85, 86. It was well said in this case, one where a pedestrian was run down while crossing a street near the end of a bridge, that: ''Courts have said that the look-and-listen rule does not apply with the same rigor to pedestrians crossing city streets that it does to pedestrians crossing railroad and street car tracks. These views were first expressed in the early days of automobile traffic, when such traffic was not as heavy, and when the operator of an automobile was not in especial public favor. Year after year, however, we find greater congestion of automobile traffic in city streets, and the danger to the pedestrian constantly increasing. Changing conditions have laid upon him a greater duty with reference to his own safety when he attempts to cross city streets. As a practical proposition, his duty to look for approaching automobiles is more imperative when attempting to cross a main city street than when crossing a railroad or a street railway track, because the danger is more constant. Railroad trains pass at rather infrequent intervals. Street cars pass with greater frequency than railroad trains, but, compared to automobiles, the passing of either is a rare occurrence. While the automobile is more pliable in its management to the end that a collision may be avoided, nevertheless the far greater frequency with which automobiles pass, as a practical proposition, renders the crossing of a busy city street scarcely less dangerous than the crossing of a railroad or a street car track. While it was formerly said that the presence of a railroad track was a warning of danger, it must be admitted that the dangers attendant upon the crossing of a busy city street are far more numerous, even though they be less serious.

At any rate the time has come when ordinary care requires the pedestrian to look for approaching automobiles before he leaves the zone of safety.''

■ No question is made here but that the defendant was negligent. While the plaintiff had the right to assume that the defendant would not drive in a negligent manner and would not exceed the local speed limit of twenty miles per hour, he could not for that reason omit any care that the law demanded of him, as the rule applies only in favor of one whose own conduct measures up to the standard of due care. *Steele* v. *Fuller*, 104 Vt. 303, 308, 158 Atl. 666.

■ The plaintiff was sixteen years old and about in the middle of his second year in high school. He was familiar with the situation at the bridge and with the roads and streets in the vicinity. He had known for a long time that the bridge was narrow and that there was only about room for two cars to pass. After he looked to the west the first time, he waited for some cars from the east to pass, so that, for aught that appears, sufficient time had elapsed for a car to approach near him from the west. He must have known that, if a car was coming from the west, it would have to meet these cars and so would be traveling near the south walk upon which he was standing. Although, in his approach to the bridge, he had seen no cars coming from the west, the situation and his conduct in looking at all to the west show that cars might be expected from that direction. Applying the standard of care required of infants, set forth in *Johnson's Admr.* v. *Rutland R. R. Co.*, 93 Vt. 132, 137, 106 Atl. 682, we hold that the plaintiff was clearly guilty of contributory negligence as a matter of law, and that under the circumstances he did not exercise the care and prudence reasonably to be expected from one of his age, capacity, intelligence, and experience in similar circumstances. Because of his obstructed view, he should have ascertained effectively that no automobile was approaching from the west within a dangerous distance immediately before attempting to cross to the north walk. The court should have granted defendant's motion.

*Judgment reversed, and judgment for the defendant to recover his costs.*