GEORGE RUSH *v.* CLIFFORD CODY ET AL.

February Term, 1935.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed May 7, 1935.

*Carpenter & Clawson* for the defendants.

*Jones & Jones* for the plaintiff.

SHERBURNE, J.    This is an action to recover damages for injuries received by the plaintiff when run over by a truck. Verdict and judgment were for the plaintiff and the defendants severally excepted.

The accident happened at about 4 p.m. on September 13, 1932. A gang of men and trucks were engaged in road construction work one-half to three-quarters of a mile below Peru village. This construction began at the top of a hill, and from there had been carried away from the village down the hill about 200 feet. The road was constructed of large stones with layers of coarse and fine gravel, the finer being on top. The gravel was drawn through the village from a point some distance beyond. Defendant Cody was operating one of the trucks and drawing gravel. This truck was owned by defendant Williams. It was a Ford one and one-half ton truck, 17 feet long over all, with dual rear wheels. There were fenders over the front wheels, but none over the rear wheels. It had a steel cab 5 feet wide with two steel doors and a wooden dump body 12 inches high, 5 feet wide and 8 feet long. Thirteen feet from the extreme front of the truck and a little in front of the rear wheels was a crosspiece under the body which projected out 6 inches beyond the body on each side, but did not quite extend to the dual wheels. There was a similar crosspiece under the rear end of the body. The plaintiff's work was to level the gravel after the trucks had dumped it.

It was primary election day, and, although he had not previously communicated his intention to defendant Cody, plaintiff planned to stop work for a time and, after Cody had dumped his load and turned around, to ride up to the village with him and vote, after which he would ride back on another truck and return to work. There was a sharp conflict as to how the accident happened, but for our purposes here we view the evidence most favorable to the plaintiff.

As Cody came along with a load of fine gravel, the plaintiff showed him where to unload on the left side going down, and then loosened the end boards so that the gravel would spread as the truck proceeded with the body in the dumping position; most of the gravel was thus spread about the right thickness, but a heap was dumped over the end boards which the plaintiff had to level off. After unloading, the truck went along about 5 rods to where there was a barway, into which it backed in turning around, and then returned up over the road, while the plaintiff was leveling off the heap of gravel with a shovel and with his back toward the truck. While doing this leveling he heard the truck most of the time. He heard it backing and stop, so

that he knew it was turning around. He was so used to it he could tell. He turned his head to the left and saw that the truck's forward wheels were in the middle of the road and the rear wheels were still on the side. At this time the truck was a little over four rods from him and he was standing about two feet from the edge of the gravel on Cody's then right-hand side of the road. He had then finished leveling and had just time to face away from the road, throw his shovel upon the bank, and, as he turned back to the left to face the center of the road, to throw up his hand as a signal for the truck to stop so that he could get on. He knew the truck was very near, and just as he had faced about the fender brushed him a little and some part, he thinks the crosspiece but he didn't see, knocked him down and the rear wheel went over him. The trucks had been traveling in the center of the road as the gravel was soft on the sides. He expected that Cody would also keep in the center. Although he knew that the road was only 18 feet wide, he testified that where he stood was nowhere near the usual traveled surface and that the wheel track nearest to him must have been as much as 7 or 8 feet from him. He was aware that the surface conditions were continually changing as the work progressed. He had observed that Cody was not a competent driver, and testified that previously on that same day he had been nearly hit by this truck. He knew that there was another workman leveling coarse gravel on the other side of the road about two rods below him and must have known that in going between them the truck would have to pass not far from where he himself stood. He testified that when he turned to face the center of the road he did not walk out into the road but turned on his left foot and brought the other around beside it. He heard the truck speed up when he was nearly around and it was probably at that time that Cody shifted into a higher gear. At the time of the accident the truck had attained a speed of about six miles per hour. There were no other vehicles in the vicinity, and had the plaintiff looked he would have seen the truck before it hit him. According to the plaintiff's evidence Cody did not see him.

Under the foregoing circumstances should defendants' motion for a directed verdict upon the ground of the plaintiff's contributory negligence have been granted?

■ ■ Contributory negligence is ordinarily a question of fact for the jury, where the law has settled no rule of diligence.

but when the material facts are undisputed, and are so conclusive that but one reasonable deduction can be drawn therefrom, the question is one of law for the court; and the burden is on the plaintiff to show that he was free from negligence that contributed in the least degree to the accident. *Steele* v. *Fuller,* 104 Vt. 303, 308, 158 Atl. 666, and cases cited. The testimony of plaintiff's conduct comes from his own lips. So far as it is contradicted, it is by defendant's evidence which places him in a less favorable position. If he is to prevail he must do so upon the basis that his own testimony is true.

The plaintiff and Cody had reciprocal rights in the highway. Each was bound to exercise due care. While the constant vigilance rule did not apply to the plaintiff, and the law does not say how often he should have looked, or precisely how far or when or from where, yet he was required to exercise for his own safety the measure of care that a prudent man would exercise in the same circumstances. *Eagan* v. *Douglas,* 107 Vt. 10, 175 Atl. 222; *Aiken* v. *Metcalf,* 90 Vt. 196, 198, 199, 97 Atl. 669. In this connection it is unnecessary to determine what the plaintiff's rights would have been had he been struck when actually engaged in leveling the surface of the road. He had stopped working and was preparing to go up and vote.

No question can be made here but that Cody was negligent. While the plaintiff had the right to assume that Cody would not run him down, he could not for that reason omit any care that the law demanded of him, as the rule applies only in favor of one whose own conduct measures up to that of a prudent and careful man in like circumstances. *Eagan* v. *Douglas, supra,* 107 Vt. at page 17, 175 Atl. 222; *Steel* v. *Fuller, supra.*

At the time the plaintiff looked over his shoulder and saw the truck starting on its return, he had leveled off the heap of gravel and had nothing to do but get ready to leave. He knew that the truck was only a little over four rods away and that he must signal it to stop for him. He was aware of its approach. Previous experience had warned him of the danger of getting hit. The road was necessarily rough and uneven. He was on the right-hand side of the road while Cody was sitting on the left side of the cab. The truck was just getting up speed and was only going six miles per hour at the time of the accident. Under these circumstances a prudent man would have kept a

more constant lookout and by sight or hearing would have discovered his peril in time to save himself. We, therefore, hold that the plaintiff was guilty of contributory negligence as a matter of law. The court should have granted defendants' motion.

*Judgment reversed, and judgment for the defendants to recover their costs.*