ERNEST PARRO, b. n. f. *v.* M. A. MEAGHER.

February Term, 1936.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and
SHERBURNE, JJ.

Opinion filed May 5, 1936.

184

*Fred E. Gleason* for the defendant.

*George R. McKee* and *J. Ward Carver* for the plaintiff.

SLACK, J. The action is tort to recover for personal injuries and damage to plaintiff's motor cycle caused by a collision between it and defendant's automobile. The plaintiff had a verdict and judgment below and the case is here on defendant's exceptions.

One exception was to the refusal of the court to direct a verdict for defendant at the close of the evidence on the ground that it failed to show negligence on his part and did show contributory negligence on the part of the plaintiff. Our disposition of this exception makes consideration of other exceptions saved unnecessary.

The collision occurred about 6.30 a.m., July 16, 1934, about three miles westerly of Williston village on the main highway leading from that village to Burlington at what is known as Taft's Corners, where a highway leading from Essex to Hinesburg crosses the Williston-Burlington highway. The Essex-Hinesburg highway runs nearly due north and south, and has a "stop" sign on the westerly side 45 feet from the intersection, which was erected in compliance with the requirements of P. L. 4724-4726. The Williston-Burlington highway runs in a northwesterly and southeasterly course, has a cement surface, is a "through way," and there is a "cross road" sign and a "slow" sign on the northerly side of it about 150 feet and 90 to 95 feet, respectively, east of the intersection. The plaintiff was traveling from Williston toward the intersection and defendant was traveling toward the same point from Essex. The plaintiff was driving a Harley-Davison, 1929 model, motor cycle that he had driven eight or nine thousand miles, which was in A-No. 1 condition, the brakes having been adjusted and "the machine all checked over" only two days before. It was a clear morning and the surface of the highway was dry. The plaintiff had

driven over the highway he was on twice a week for nearly two years.

He testified that when about 100 feet east of the intersection, and traveling 35 to 40 miles an hour, he saw defendant approaching the intersection from the north on the Essex-Hinesburg road around 35 to 40 feet from the intersection, traveling about 25 miles an hour; that when he saw defendant he started to slow up, and had reduced his speed to 10 to 15 miles an hour when 9 to 10 feet from the intersection; that defendant was then 8 or 9 feet from the cement; that when he saw defendant was not going to stop, as he expected he would, he slammed on his brakes but did not have time to stop, and defendant made a left-hand turn and crashed into him; that with his motor cycle and the surface of the highway in the condition they then were he could stop when going 35 to 40 miles an hour in around 100 feet or so, and when going 10 to 15 miles an hour could stop in 15 to 20 feet; that "it takes quite a little space to stop them, you can't hold your wheel continuous."

One Boyce, a witness for plaintiff, testified that he was following plaintiff 800 to 900 feet behind him driving from 35 to 40 miles an hour; that when 900 to 1,000 feet from the intersection he saw defendant's car on the Essex road 15 to 20 feet from the intersection; that it was going from 20 to 25 miles an hour when it came onto the cement, and that he found plaintiff and the motor cycle on the southerly side of the cement, east of the intersection.

One Laundry testified that he was riding with Boyce and when 700 to 800 feet from the intersection saw defendant's car about 10 feet from the cement going 20 miles an hour.

Walter H. Jeffrey, a State motor vehicle inspector called as a witness by plaintiff, testified that he arrived at the scene of the accident at 7.15 a.m.; that he found a brake burn or tire mark left by the motor cycle on the northerly part of the cement and east of the intersection 91 feet in length, which at the westerly end turned very abruptly to the left and ended there, about 8 feet in a diagonal course from where he found the motor cycle; that he had been an inspector for eight years, had used a Harley-Davidson motor cycle during all that time, was familiar with the 1929 model, and had ridden one a great many hundreds or thousands of miles. As defendant's witness

he then testified that a motor cycle like plaintiff's, in the condition it was in before the accident, could not be stopped on dry cement, when going 35 to 40 miles an hour in less than 140 feet. Defendant's car went across the cement and over the shoulder on the south side of the highway, a drop of 3 or 4 feet, and stopped about 25 feet south of the cement.

The provisions of our statute material in this case are found in P. L. 5110. Subd. II provides: "Except as hereinafter provided, all vehicles shall give the right of way to other vehicles approaching at intersecting highways from the right; and shall have the right of way over those approaching from the left," etc. Subd. III provides: "All intersecting highways shall be approached and entered slowly and with due care to avoid accidents. * * * In making a turn to the left into an intersecting highway, the operator or driver of the vehicle about to make such turn shall reduce speed as an indication of his intention to make the turn and pass to the right of and beyond the center of the highway intersection before turning." Subd. IV reads: "Every vehicle immediately before entering the limits of a through way, defined, designated and warned as provided in section 4724, except at a terminus thereof, shall be brought to a full stop," etc.

The provisions of subd. IV do not abrogate those of subd. II. Both being part of the same statute they must be construed together, and so construed they mean simply this: a driver approaching a through way from the right still has the benefit of the right of way rule, provided he stops as required by subd. IV and thereafter exercises due care in entering the arterial way. *Dikel* v. *Mathers,* 213 Iowa, 76, 238 N. W. 615; *McCulley* v. *Anderson,* 119 Neb. 105, 227 N. W. 321; *Bell* v. *Pickett,* 178 Minn. 540, 227 N. W. 854.

Regarding defendant's conduct it is enough to say that the evidence tended to show that he did not heed the stop sign, that he entered the Williston-Burlington road in a careless and reckless manner, and that he failed to pass to the right of and beyond the center of the highway intersection before turning to his left. His negligence was clearly established.

It is equally clear that the evidence tended to show that plaintiff was guilty of contributory negligence. The only question is whether the evidence was such as to entitle him to go to

the jury on that issue. Ordinarily the question of contributory negligence is for the jury, where the law has settled no rule of diligence, but when the material facts are undisputed, and are so conclusive that but one reasonable deduction can be drawn therefrom, the question is one of law for the court. *Steele* v. *Fuller*, 104 Vt. 303, 158 Atl. 666; *Parker, Admr.* v. *Smith*, 100 Vt. 130, 135 Atl. 495; *Crichton* v. *Barrows Coal Co.*, 100 Vt. 460, 139 Atl. 252. The plaintiff had the burden of showing freedom from contributory negligence, and consequently of producing evidence sufficient to take the case to the jury. In the circumstances, his negligence must be determined by what he did or omitted to do, without regard to defendant's lack of care. *Sulham* v. *Bernasconi*, 106 Vt. 192, 198, 170 Atl. 913; *Higgins* v. *Metzger*, 101 Vt. 285, 291, 143 Atl. 394. While, as he claims, he had the right to assume that defendant would not drive in a negligent manner and would bring his car to a full stop before entering the Williston-Burlington highway, he could not for that reason omit any care that the law demanded of him, as the rule applies only in favor of one whose conduct measures up to the standard of due care. *Mooney* v. *McCarthy*, 107 Vt. 425, 181 Atl. 117; *Eagan* v. *Douglass*, 107 Vt. 10, 175 Atl. 222; *Steele* v. *Fuller, supra*. No one driver must obey the rules; all must obey them. And the circumstances and dangers in each particular case are always to be taken into account in determining what is due care or evidence of it. *Eagan* v. *Douglass, supra; Aiken* v. *Metcalf*, 90 Vt. 196, 97 Atl. 669.

 It is apparent that this accident, as far as plaintiff is concerned, was due solely to his inability to stop his machine because of its speed when he first saw defendant's car. While the question of whether the operation of a car at a certain speed constitutes negligence is ordinarily for the jury, *Higgins* v. *Metzger, supra*, and cases cited, it is not necessarily so. It is said in *Wingert* v. *Cohill*, 136 Md. 399, 403, 110 Atl. 857, 859, cited in *Higgins* v. *Metzger:* ''The question of what is or what is not, a speed that a court will declare negligent as a matter of law varies, and must vary, very largely with the circumstances of each particular case.'' In the instant case the plaintiff was familiar with the highway on which he was driving and with the intersection, or in the circumstances will be presumed to have been. He had driven his machine 8,000 or 9,000 miles and

knew, or ought to have known, the distance in which it could be stopped. While he testified that it could be stopped in "around 100 feet or so" when traveling 35 to 40 miles an hour, he also testified that he had reduced his speed to 10 to 15 miles an hour 9 to 10 feet from the intersection and that at that speed it would require 15 to 20 feet to stop, which would carry him beyond the intersection. It appeared, too, that in traveling the 90 or 91 feet in which he so reduced his speed, his brakes were applied so hard that the wheels of the machine made a "brake burn or tire mark" on the cement the entire distance; and that when he applied his brakes he was traveling at practically the same speed he had maintained from Williston village. The testimony of the inspector, Jeffrey, who had driven this type of machine a great many hundreds or thousands of miles, was that when traveling 35 to 40 miles an hour it could not be stopped in less than 140 feet; but since on this motion the evidence must be viewed in the light most favorable to plaintiff, the testimony of Jeffrey, except as far as permissible, by reason of the latitude of plaintiff's testimony, "around 100 feet or so," must be disregarded. However, with this testimony aside, the evidence regarding plaintiff's negligence does not admit of opposing inferences. It clearly shows that he disregarded the requirements of P. L. 5110, subd. III, and failed to have his machine under proper control as he approached the intersection, *Standard Oil Co. of New York* v. *Flint*, 108 Vt. 157, 183 Atl. 336; *Williamson* v. *Clark*, 103 Vt. 288, 291; that, instead, he chose to take a chance on having a clear way, and lost. In the circumstances he was guilty of contributory negligence as a matter of law.

*Judgment reversed and judgment for defendant to recover his costs.*