BLANCHE DUCHAINE, b. n. f. *v.* MAYNARD C. RAY.

February Term, 1939.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed May 2, 1939.

*Emory C. Mower* for the defendant.

*J. Boone Wilson, Charles F. Black* and *Willsie E. Brisbin* for the plaintiff.

BUTTLES, J. In this tort action the plaintiff, by her next friend, seeks damages for personal injuries suffered as a result of being struck by an automobile driven by the defendant when the plaintiff, a pedestrian, had nearly completed crossing Elmwood Ave. near its intersection with Pearl Street in the city of Burlington. Pearl Street runs east and west, or nearly so. Elmwood Avenue commences at Pearl Street and runs northerly substantially at a right angle. At or near the intersection the width of Pearl Street is about 40½ feet, and of Elmwood Avenue about 35 feet. On the northeast corner of this intersection is the Unitarian church yard, and on the northwest corner is a gasoline filling station and yard which extends northerly on Elmwood Avenue for a distance estimated at 100 feet or more.

The driveway, which is referred to as the south driveway, leading into the filling station yard from Elmwood Avenue is 30 feet 3 inches wide from north to south and 9½ feet in depth from the curbing to the outer edge of the sidewalk. The southerly edge of this driveway is about 9 feet northerly from the northerly line of the crosswalk crossing the avenue on the northerly side of Pearl Street.

On November 12, 1937, at about 6:20 p. m., the plaintiff, on her way home from work at a Woolworth store on Church Street, walked westerly on the southerly side of Pearl Street for a distance and then crossed that street, probably diagonally, to the northeasterly or church yard corner of Pearl Street and Elmwood Avenue. Here she turned left and started to cross the avenue. In crossing she did not remain on the crosswalk but at some point left the crossing and headed towards the south driveway into the filling station yard.

In the meantime the defendant drove a 1936 Buick coach easterly on the southerly side of Pearl Street from St. Paul Street, which is westerly of Elmwood Avenue, to the intersection of that avenue and Pearl Street, slowed down to ascertain whether another car coming down Pearl Street on the other side wished to precede him, and then turned left into Elmwood Avenue near the center of the intersection and in a roughly semi-circular course proceeded across the avenue and into the south driveway leading to the filling station. As the car was entering or shortly before it entered the driveway it came in contact with the plaintiff, knocking her down and injuring her. She was

struck across the middle of the back, apparently by the left door handle of defendant's car. Trial was had by jury with verdict and judgment for the plaintiff, and the defendant comes to this Court on exceptions to the overruling of his motion to set aside the verdict, to failure of the court to charge in accordance with one request for charge, and to claimed improper and prejudicial argument of plaintiff's counsel.

Defendant has briefed his exception to the overruling of his motion solely on the claimed ground that the plaintiff was guilty of contributory negligence as a matter of law. He does not brief his exception to the failure of the court to charge in accordance with his request except to treat his argument on the overruling of his motion as covering his exception to the failure to charge also.

The defendant having briefed only the question of contributory negligence as a matter of law in support of his motion, the evidence must be taken in the light most favorable to the plaintiff, since in this respect the motion is the same in nature and substance as a motion for a directed verdict. *Farrell* v. *Greene,* 110 Vt. 87, 2 Atl. (2d) 194, 195; *Belock et al.* v. *State Mut. Fire Ins. Co.,* 106 Vt. 435, 440, 175 Atl. 19; *Spaulding et al.* v. *Mutual Life Ins. Co. of N. Y.,* 94 Vt. 42, 57, 109 Atl. 22. So taken, the evidence shows that before starting to cross Elmwood Avenue the plaintiff stopped and looked up Pearl Street and down Pearl Street and looked up Elmwood Avenue and saw no cars coming in her direction; she then started to cross and followed the crosswalk near the right line and continued to look for cars coming in all directions; when she got to about the middle or a little past she looked up Elmwood Avenue and saw no cars coming, but still continued to watch on all sides, and took a few steps more, and then cut across into the driveway still on the lookout for cars in all directions.

The evidence indicates that at the time of the accident plaintiff was at least 8 or 9 feet outside the line of the crosswalk, and in that situation the vigilance and watchfulness required of her was somewhat greater than if she had remained on the crosswalk. *Howley* v. *Kantor,* 105 Vt. 128, 131, 163 Atl. 628; *Eagan* v. *Douglas,* 107 Vt. 10, 15, 175 Atl. 222. It does not follow, however, that the plaintiff necessarily failed to exercise that degree of care that the law required. The law does not

say how often a pedestrian about to cross a street must look or precisely how far or when or from where. He is simply required to exercise for his own safety the measure of care that a prudent man would exercise in the same circumstances. But as circumstances vary so do the practical requirements of the rule vary. The circumstances and dangers are always to be taken into account in determining what is due care or the evidence of it. *Eagan* v. *Douglas, supra,* 107 Vt. at p. 15, 175 Atl. 222; *Aiken* v. *Metcalf,* 90 Vt. 196, 199, 97 Atl. 669. In our cities and villages due care requires a pedestrian in all cases to look for traffic before starting to cross a main traveled street between intersections, or to look at such time and place as will reasonably be of some benefit in protecting him and giving him knowledge of the condition of the traffic. *Eagan* v. *Douglas, supra; Watson* v. *Lit Bros.,* 288 Pa. 175, 135 Atl. 631; *Kalify* v. *Udin,* 52 R. I. 191, 159 Atl. 644. Nevertheless this Court has said in *Parker, Admr.* v. *Smith,* 100 Vt. 130, 132, 135 Atl. 495, with reference to crossing a city street from east to west that after a pedestrian had passed the center of the street he had reached a point where the jury might reasonably infer that a prudent man would give his chief attention to cars approaching him from his right, in this case from the north, and relax somewhat his watchfulness for cars approaching from the other direction. *Aiken* v. *Metcalf, supra,* 90 Vt. 196, p. 200, 97 Atl. 669; *MacDonald* v. *Orton,* 99 Vt. 425, 429, 134 Atl. 599. The plaintiff had the right to assume that the defendant would not drive in a negligent manner, but she could not for that reason omit any care which the law required of her, as the rule applies only in favor of one whose own conduct measures up to the standard of due care. *Farrell* v. *Greene, supra; Parro* v. *Meagher,* 108 Vt. 182, 188, 184 Atl. 885; *Eagan* v. *Douglas, supra,* 107 Vt. at p. 17, 175 Atl. 222; *Rush* v. *Cody et al.,* 107 Vt. 326, 330, 178 Atl. 891.

 It should be borne in mind that the defendant's car did not strike the plaintiff while approaching from the north or directly from the south nor while driving at right angles to the street into the filling station yard, but while moving in a semicircular course from Pearl Street into Elmwood Avenue, across at least a portion of the westerly lane of traffic and into the filling station driveway. In his report to the motor vehicle department, which is an exhibit in the case, the defendant states:

"As I was going into gas station yard I kept turning left." There was evidence from which the jury could find that the speed of defendant's car as it came into Elmwood Avenue was 18 miles per hour (or about 26 feet per second). Under these circumstances the rule that a person will be presumed to see whatever is in line of his vision would not be applicable. If she looked at the times and in the places and in all directions, as plaintiff testified she did, she still might not have seen the car during the instant of time that its position would have indicated her peril. Nor can it be said that her failure to turn and look directly behind her during that instant indicated negligence as a matter of law. The constant vigilance rule of railroad crossings does not apply to a pedestrian crossing the highway. *Eagan* v. *Douglas, supra; Aiken* v. *Metcalf, supra.*

The defendant contends that the fact that 10 feet of the length of the car must have passed close to plaintiff before being struck by the door handle and the further fact of the lights of the car shining ahead of it gave such warning that the plaintiff was negligent as a matter of law in not moving the slight distance necessary to escape the peril. It should be borne in mind, however, that at 18 miles per hour the 10 feet of the car in front of the door handle would pass the plaintiff in less than one-half of a second and that because of the circular course of the car before described the lights could have been directly behind the plaintiff or in such position as to indicate danger only for an instant. Furthermore, it appears that the defendant was driving with his bright lights dimmed and that the area into which he was advancing was quite well lighted. Under these circumstances we cannot say that it was negligence as a matter of law on the part of the plaintiff not to have seen the car or its lights and appreciated the danger in time to escape therefrom. As is usual in such cases it is easy enough to look back at this accident and see how a little more watchfulness on the plaintiff's part would have saved her. But this is not conclusive against her. She is to be judged by the situation as it appeared or ought to have appeared to her at the time. *Aiken* v. *Metcalf, supra,* 90 Vt. 196, at page 201, 97 Atl. 669. We find no error in the overruling of defendant's motion to set aside the verdict.

It follows from the foregoing discussion that defendant's request to charge was properly refused. This request

reads as follows: ''It will be presumed that the plaintiff saw whatever was in range of her vision if she looked. And it will not avail her to say that she looked and did not see. In other words, if the plaintiff looked to her right and/or to her left and/or to her rear and by so looking could have seen the car operated by the defendant in sufficient time to have avoided the same, it will not avail her to say that she looked and did not see it but it follows that if she did so look and could have seen it, that she did not look effectively and was therefore guilty of contributory negligence as a matter of law.''

An objection was taken and exception granted to the argument of plaintiff's counsel, in substance this: ''Put yourself in the place of this plaintiff, and assess damages on that theory.'' The record does not disclose the exact language to which the exception was allowed, nor does it show that anything further was said by the court or by counsel regarding the matter. Again defendant's counsel objected and was allowed an exception to the argument of plaintiff's counsel in substance this: ''Put your daughter in the place of this girl and what would you give her?'' It is conceded that this remark was withdrawn by counsel before the jury, and in the court's charge the jury were instructed to discard from their minds whatever had been said by counsel in argument and withdrawn. The withdrawal and charge were sufficient to cure whatever mischief there may have been in that portion of the argument. *State* v. *Stacy*, 104 Vt. 379, 404, 160 Atl. 257, 747; *Healy, Admr.* v. *Moore*, 103 Vt. 324, 337, 187 Atl. 679.

But the withdrawal and caution of the court did not include the remark first above referred to. We deem that remark highly improper and, as was said in *Hall* v. *Fletcher*, 100 Vt. 210, 213, 136 Atl. 388, a lamentable departure from the rule which required counsel to confine his argument to the evidence in the case and to the inferences properly to be drawn therefrom, and to avoid appealing to the prejudice of the jury. Counsel should have been reprimanded by the court and required to withdraw the remark and the jury cautioned to disregard it. The action of the court in allowing the exception was, in effect, a ruling that the argument was proper. *Hall* v. *Fletcher, supra*; *Mt. Ida School* v. *Gilman*, 96 Vt. 13, 18, 116 Atl. 71, and this was error. We must, however, inquire whether

the error was prejudicial, since, under our present practice, error works a reversal only when the record satisfies the Court that the rights of the excepting party have been injuriously affected thereby. Supreme Court rule 9; *Russ* v. *Good,* 92 Vt. 202, 207, 102 Atl. 481; *Button* v. *Knight,* 95 Vt. 381, 386, 115 Atl. 499; *Wittig* v. *Burnap,* 99 Vt. 340, 342, 132 Atl. 39; *LaFerriere* v. *Gray,* 104 Vt. 366, 370, 160 Atl. 270; *State* v. *Parker,* 104 Vt. 494, 500, 162 Atl. 696.

The improper remark suggested a false standard for the measurement of damages, but it is addressed only to the matter of damages, and we are not satisfied that it resulted injuriously to the defendant on the question of liability, particularly as the record shows, as we have seen, that the jury was warranted in finding the plaintiff not guilty of contributory negligence, and the finding of negligence on the part of the defendant appears, by the record, to be amply supported by the evidence.

In determining whether the remark was prejudicial in the matter of damages we consider whether the verdict of $2,250 indicates such prejudice. The evidence discloses that the plaintiff was a recent high school graduate with a life expectancy at age 19 of 42.87 years. No claim was made for medical or dental expenses. As a result of the accident she lost time from work for one month at $11 per week. The damage to her clothing was slight. She received medical treatment at her home only on the night of the injury, and thereafter on thirteen or fourteen occasions, ending on March 15, 1938, at the respective offices of the two doctors who attended her.

Aside from slight abrasions or "brush burns" the principal injuries sustained were an injury to the inner surface of the upper lip, the breaking off of one front tooth and the loosening of three others to such an extent that all four, which were perfect before, eventually had to be extracted, false teeth with bridge work being substituted. Dental treatments on five occasions covering sixteen days were required before the last teeth were extracted, and during that period plaintiff complained of constant pain.

There was also a bruised area in the lumbar region of the back about the size of the palm of the hand. No objective symptoms of this back injury were found by Dr. McSweeney two

weeks after the injury, but plaintiff complained of some soreness on that date. The doctor testified that there is nothing in his notes of subsequent examinations up to March 15, 1938, relative to her back condition.

At the trial, ten months after the injury, the plaintiff testified as follows:

Q. "Whether, toward the end of the day particularly, you would get a continual ache up and down the back?"

A. "Yes, about the middle of the afternoon."

Q. "How long has that persisted?"

A. "Even now, when I am very tired or if I work longer than the ordinary day's work my back gets very tired and aches continually."

A medical witness for the defendant who examined the plaintiff's back in September, 1938, testified that he could find nothing wrong with it. The plaintiff's lip injury was a bruise, surrounding which was an area of induration or hardness. On December 2nd and again on December 27th her doctor incised this indurated area and took some fluid therefrom, and on December 30th he removed the entire cystic area under local anesthesia. Thereafter the area healed, leaving some scar tissue, a small part of which is still there, causing a puffing out of the lip, which in the opinion of her doctor will be permanent. The defendant's medical witness, on the occasion of his last examination, found the lip practically normal with a very slight protrusion. The evidence indicates that the chances of decay of the other teeth are slightly increased by the presence of the bridge work in plaintiff's mouth, and that the gold abutment is slightly visible.

The evidence bearing on damages, the important parts of which we have outlined, does not satisfy us that the verdict was excessive or that the error with respect to the improper argument has injuriously affected the rights of the defendant.

*Judgment affirmed.*