CUMMINGS v. WHITNEY.

No. 192, Docket 22543.

United States Court of Appeals
Second Circuit.

Argued March 9, 1953.

Decided April 10, 1953.

Wallace C. Schinoski, Ludlow, **Vt.**, Bloomer & Bloomer and Asa Bloomer, Rutland, Vt., for plaintiff-appellee.

Osmer C. Fitts and Philip H. Suter, Brattleboro, Vt., William H. Edmunds, Burlington, Vt., of counsel, for defendant-appellant.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

Invoking the diversity jurisdiction of the District Court, the appellee, as administratrix of the estate of Charles Marro, sued to recover damages under Vermont law for his death. He was accidentally killed when hit by the front end of a truck driven by the appellant on a main traveled street in the business section of Springfield, Vt. This appeal is from a final judgment entered on a verdict in her favor. The appellant relies for reversal upon the denial of a motion for a directed verdict, of a motion to set aside the verdict, and of a motion for judgment *non obstante veredicto,* as well as upon asserted errors in the charge.

The appeal presents but one issue in so far as the denial of all three of the motions is concerned and that is whether the evidence, with conflicts resolved in the light most favorable to the appellee, was sufficient to take the case to the jury both on the question of the appellant's negligence and on that of Marro's freedom from contributory negligence.

The jury could have found on the evidence substantially as follows:

At about a quarter to six in the afternoon of November 29, 1951 the appellant drove a two-ton empty Ford truck having dual rear wheels southerly along Main Street in Springfield, Vt., and stopped on his right side of the street at the intersection of Park Street on the west to wait for a red traffic light to change to green. Nearly opposite Park Street was the intersection of Main Street by Summer Hill Street on the east. When the traffic light

changed to green the appellant started his truck in low gear and then, after a slight wait for passing traffic to get out of the way, and without a signal of any kind, turned to his left and drove in low gear across the northbound traffic lane of Main Street and into Summer Hill Street, making the turn so sharply that he entered Summer Hill Street a little to the left of center. Running from the end of a safety island at the northwest corner of Summer Hill and Main Streets south across the westerly end of Summer Hill Street to the sidewalk at the northwest corner of a building called the Sparrow Block was a marked cross-walk for pedestrians which was four feet wide. As the left rear wheels of the truck were at the west side of this cross-walk the appellant first saw Marro in the street a few feet directly in front of his right head light. He immediately applied his brakes and stopped in ten feet but meanwhile the front of the truck had hit Marro who was knocked unconscious and fell to the street about ten feet ahead, i. e. east, of the point the truck stopped. He died while still unconscious.

Marro had left the sidewalk on the south side of Summer Hill Street a few feet west of another cross-walk marked across Summer Hill Street for pedestrian use a little east of the Sparrow Block and was attempting to cross the street between the two cross-walks diagonally in a northwesterly direction toward the safety island. He had gone between cars parked at the sidewalk and, when he was hit, was at least thirty-four feet north of the curb of the sidewalk he had left. On the curb near the Summer Hill Street end of the cross-walk first mentioned was an automatic traffic light which alternately showed green, amber and red lights and a sign on it read, "Cross on Red and Amber Only." There was a similar light near the northerly end of the other cross-walk. From the time the appellant started after the slight wait for traffic, there was nothing to obstruct his vision ahead or to interfere with the movement of his truck, except Marro's attempt to cross the street, and from the time Marro stepped off the sidewalk there was nothing to obstruct his vision in the direction of the truck, at least after he emerged from between the parked cars.

Under these circumstances, the issue of the appellant's negligence was for the jury. He had turned to his left into Summer Hill Street without going to the right of the center of it as he should have done in compliance with § 10219 of the Vermont Statutes 1947; he had given no signal whatever; he had so driven that when the truck was but one length in Summer Hill Street it had momentum enough to make the rear wheels skid ten feet when he made an emergency stop; and he had not seen Marro until he was but a few feet ahead and too late to control his truck to prevent hitting him. Whether any, or all, of such conduct amounted to negligence which proximately caused Marro's death was a question which could not be decided by the court wholly as a matter of law. Emerson v. Hickens, 105 Vt. 197, 164 A. 381; Healy, Adm'r v. Moore, 108 Vt. 324, 348, 187 A. 679; Williamson v. Clark, 103 Vt. 288, 153 A. 448.

But the appellee could not make out a case for submission to the jury solely on the appellant's negligence. Under Vermont law, which is controlling, she had to prove affirmatively that no negligence of Marro contributed to the proximate cause of his death. Colburn v. Frost, 111 Vt. 17, 9 A.2d 104; Farrell v. Greene, 110 Vt. 87, 2 A.2d 194; Parro v. Meagher, 108 Vt. 182, 184 A. 885. No one who saw him before the accident testified except the appellant and a lady called by him who said that Marro hurriedly stepped off the sidewalk and went out between two cars and to the place he was hit with his head down and without looking for traffic at all. But her credibility was, of course, for the jury and such evidence might be discredited as it evidently was. It did not make the denial of any of the motions erroneous. In deciding them the court was bound to accept at face value whatever evidence was favorable to the appellee and to lay aside contradictory evidence and inferences. Tinney v. Crosby, 112 Vt. 95, 22 A.2d 145.

Yet, this testimony aside, there was no direct evidence of what Marro did

when, or after, he left the sidewalk except that a plan marked in evidence as Plaintiff's Exhibit 5 shows he walked in the street in a northwesterly direction to the place he was hit by the truck which was moving in a southeasterly direction toward him. That Marro looked to see what might be the condition of the traffic in the street before he started to cross it, or at any time thereafter until it was too late for him to do anything to avoid being hit, was not shown in any way unless a permissible inference that he did might have been drawn by the jury from what evidence there was to show how the accident happened. If he went into the street and continued to walk in it without looking at all to see what hazards he might encounter he was negligent as a matter of law. The Vermont law applicable to one in his situation is well shown by the recent case of Hill v. Stringer, 116 Vt. 296, 75 A.2d 657, 659. It is that a person who tries to cross a street where there is no regular cross-walk must be more vigilant and watchful than one who uses a cross-walk. Though there is no precise legal requirement as to when, from where, or how often he must look for traffic in the street while he is going across it, he must take such care for his own safety as would a prudent man in like circumstances, and his duty in respect to observation was more particularly stated as follows: "In our cities and villages due care requires a pedestrian in all cases to look for traffic before starting to cross a main traveled street between intersections, or to look at such time and place as will reasonably be of some benefit in protecting him and giving him knowledge of the condition of the traffic." To like effect are Howley v. Kantor, 105 Vt. 128, 628 A. 628; Colburn v. Frost, supra; Duchaine v. Ray, 110 Vt. 313, 6 A.2d 28; and Eagan v. Douglas, 107 Vt. 10, 175 A. 222.

■ The facts here shown afford no sound basis for an inference by the jury that Marro looked to see what condition the street was in as regards traffic either before he started to cross or while he was going across. The likelihood that he did not, in the light of what happened is certainly as great, if not greater, than that he did. This left the appellee's case short of adequate proof to show by a preponderance of the evidence that Marro was not negligent in this respect and such negligence would obviously have been a proximate, contributory cause of his death. Consequently, the jury should not have been permitted to speculate and conjecture that he was not negligent and a defendant's verdict should have been directed.

The exceptions to the charge do not require discussion.

Judgment reversed and cause remanded with directions to enter judgment for the appellant.

CLARK, Circuit Judge (dissenting).

This seems to me a typical jury case. The jury could have found that deceased went north on the east side of the intersection on a green light, which he could think had its ordinary meaning; that defendant, going south on the west lane, turned sharply left on the wrong side of the center of the intersection; and that he was driving his truck with such speed and power that his brakes dragged for ten feet after their application and he then struck deceased with sufficient force to throw the body another ten feet. The jury might also discredit the testimony of the eyewitness on the ground that she remembered too much too precisely and from a poor vantage point. All that is found wanting is lack of evidence of due care in observation on the part of the deceased. But, taking the facts as I suggest the jury could have found them, it seems to me clear that the jury might well conclude the defendant's operation was such that decedent, starting from the curb when he was entitled to, was nevertheless likely to be hit in any event. Even if decedent had looked to his left for traffic coming east toward him, he might not have seen defendant's truck approaching improperly from the intersection, or at any rate not in time to prevent the accident. The timing of events in a motor vehicle accident is so interwoven that I think we should greatly hesitate to conclude that one event must as a matter of law have happened so far before another

358

that legal negligence is inevitably established. Here we are holding that deceased had time after seeing the truck out of position and coming too fast to draw back and avoid the danger. How can we say that?

The matter is all the more serious, since deceased was killed in this accident and cannot himself testify. We do not want to put a premium on killing the victim. A similar case arose in Connecticut, Kotler v. Lalley, 112 Conn. 86, 151 A. 433, leading to a notable dissent by Wheeler, C. J., and a change by statute, as discussed by us in Balchunas v. Palmer, 2 Cir., 151 F.2d 842. But we do not want to promote reform that way. I should think at the very least there should only be a direction for a new trial; and since I finally conclude that the charge was probably justified under Vermont precedents, I should affirm.